IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re: | x | |
| PITTSBURGH CORNING CORPORATION | : | Civil Action No. 11-1406 |
| Debtor. | : | Bankruptcy No. 00-22876 (JKF) |
| | . | Re: D.I. 8488 |

------------------------------------------------------------x

| | | |
|---|---|---|
| GARLOCK SEALING TECHNOLOGIES, LLC, | : | Judge Nora Barry Fischer |
| Appellant, | : | |
| v. | : | Electronically Filed |
| | : | |
| PITTSBURGH CORNING CORPORATION, | : | |
| Appellee. | : | |
| | x | |

| | | |
|---|---|---|
| In re: | x | |
| | : | |
| MID-VALLEY, INC., | : | Civil Action No. 11-1439 |
| Debtor. | : | Bankruptcy No. 03-35592 (JKF) |
| | . | Re: D.I. 2817 |

------------------------------------------------------------x

| | | |
|---|---|---|
| GARLOCK SEALING TECHNOLOGIES, LLC, | : | Judge Nora Barry Fischer |
| Appellant, | : | |
| v. | : | Electronically Filed |
| | : | |
| MID-VALLEY, INC., | : | |
| Appellee. | : | |
| | x | |

| | | |
|---|---|---|
| | x | |
| In re: | : | |
| NORTH AMERICAN REFRACTORIES | : | Civil Action No. 11-1452 |
| COMPANY, | : | Bankruptcy No. 02-20198 (JKF) |
| Debtor. | : | Re: D.I. 7246 |

------------------------------------------------------------x

| | | |
|---|---|---|
| GARLOCK SEALING TECHNOLOGIES, LLC, | : | Judge Nora Barry Fischer |
| Appellant, | : | |
| v. | : | Electronically Filed |
| | : | |
| BARON & BUDD P.C., et al., | : | |
| Appellees. | : | |
| | x | |

**BRIEF OF ACC APPELLEES**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................... ii

STATEMENT OF THE ISSUES........................................................................1

STANDARD OF REVIEW ...............................................................................1

STATEMENT OF THE CASE ..........................................................................2

SUMMARY OF ARGUMENT ..........................................................................9

ARGUMENT ....................................................................................................10

I.  Garlock's Attempt to Get the Rule 2019 Exhibits is Barred by Collateral
    Estoppel and Res Judicata..........................................................................10

    A.  Collateral Estoppel Blocks Garlock from Seeking the Rule 2019
        Exhibits Because Its Previous Attempt to Access the Exhibits Was
        Denied ...............................................................................................10

    B.  Garlock's Attempt to Seek the Rule 2019 Exhibits is also Barred by
        *Res Judicata* ....................................................................................16

II. The Rule 2019 Exhibits are Protected from Disclosure under Section 107(c)
    and its Common-Law Predecessor as Presenting an Undue Risk of Identity
    Theft and Other Unlawful Injury ...............................................................17

III. Garlock's Improper Purposes Preclude It from Gaining Access to the Rule
     2019 Exhibits .............................................................................................21

    A.  Courts May Deny Access to Documents to Prevent Them from Being
        Used for Improper Purposes ..............................................................21

    B.  Garlock Acknowledged Its Purposes for Seeking the Rule 2019
        Exhibits, and Those Purposes Are Improper .....................................22

IV. Section 107 Does Not Support Garlock's Attempts to Require the Production
    of the Rule 2019 Exhibits ..........................................................................28

    A.  Garlock Has Not Established the Applicability of Section 107(a) ......28

    B.  The Rule 2019 Exhibits Are Protected from Disclosure under Section
        107(b)(1) as Confidential Commercial Information ...........................30

CONCLUSION..................................................................................................32

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Bank of Am. Nat'l Trust & Sav. Ass'n v. Hotel Rittenhouse Assocs.*,
   800 F.2d 339 (3d Cir.1986)..............................................................................................1, 2

*Blancha v. Keene Corp.*,
   Civ. A. No. 87-6443, 1991 WL 224573 (E.D. Pa. Oct. 24, 1991)...........................................4

*Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found.*,
   402 U.S. 313 (1971)..........................................................................................................14

*Clements v. Airport Auth. of Washoe Cnty.*,
   69 F.3d 321 (9th Cir. 1995) ...............................................................................................11

*Cmty. State Bank v. Strong*,
   651 F.3d 1241 (11th Cir. 2011) .........................................................................................11

*EEOC v. U.S. Steel Corp.*,
   921 F.2d 489 (3d Cir. 1990)..............................................................................................16

*Estate of Hicks v. Dana Cos., LLC*,
   984 A.2d 943 (Pa. Super. Ct. 2009) ....................................................................................4

*Henglein v. Colt Indus. Operating Corp.*,
   260 F.3d 201 (3d Cir. 2001)..............................................................................................13

*In re 50-Off Stores, Inc.*,
   213 B.R. 646 (Bankr. W.D. Tex. 1997).........................................................................25, 30

*In re Am. Bus. Fin. Servs., Inc.*,
   No. 05-10203, 2008 WL 3906894 (Bankr. D. Del. Aug. 20, 2008) ...................................25, 29

*In re Apex Oil Co.*,
   101 B.R. 92 (Bankr. E. D. Mo. 1989).................................................................................28

*In re Barney's, Inc.*,
   201 B.R. 703 (Bankr. S.D.N.Y. 1996).................................................................................31

*In re Bennett Funding Grp., Inc.*,
   226 B.R. 331 (Bankr. N.D.N.Y. 1998) ...............................................................................19

*In re Borders Grp., Inc.*,
   No. 11–10614 (MG), 2011 WL 6057993 (Bankr. S.D.N.Y. Dec. 7, 2011)........................31, 32

*In re Brown*,
   951 F.2d 564 (3d Cir. 1991)..............................................................................................13

*In re Cendant*,
    260 F.3d 183 (3d Cir. 2001)........................................................................................21, 30

*In re Congoleum Corp.*,
    426 F.3d 675 (3d Cir. 2005)................................................................................................23

*In re Cont'l Airlines*,
    150 B.R. 334 (D. Del. 1993)..................................................................................................1

*In re Foust*,
    52 F.3d 766 (8th Cir. 1995) ..................................................................................................4

*In re Frontier Grp., LLC*,
    256 B.R. 771 (Bankr. E.D. Tenn. 2000) .............................................................................32

*In re Georgetown Steel Co., LLC*,
    306 B.R. 542 (Bankr. D.S.C. 2004) ..............................................................................30, 31

*In re Howard Komendant, C.P.A., P.C.*,
    2010 WL 2925167 (D.N.J. July 19, 2010)..........................................................................18

*In re Joyce*,
    399 B.R. 382 (Bankr. D. Del. 2009) ...................................................................................30

*In re Kaiser Aluminum Corp.*,
    327 B.R. 554 (D. Del. 2005) ...................................................................................... *passim*

*In re Madera*,
    586 F.3d 228 (3d Cir. 2009)..................................................................................................4

*In re Metro Transp. Co.*,
    107 B.R. 50 (E.D. Pa. 1989) .................................................................................................1

*In re Nortel Networks Inc.*,
    No. 09–10138 KG, 2011 WL 1661524 (Bankr. D. Del. May 2, 2011) .................................32

*In re Orion Pictures Corp.*,
    21 F.3d 24 (2d Cir. 1994) .............................................................................19, 21, 22, 31

*In re Peregrine Sys., Inc.*,
    311 B.R. 679 (D. Del. 2004)................................................................................................19

*In re Pittsburgh Corning Corp.*,
    260 F. App'x 463 (3d Cir. 2008) ...................................................................................23, 24

*In re Pittsburgh Corning Corp.*,
    No. 04-1814, 2005 WL 6128987 (W.D. Pa. Sept. 27, 2005)............................................6, 19

*In re Premier Int'l Holdings, Inc.*,
   423 B.R. 58 (Bankr. D. Del. 2010) ...............................................................7, 25

*In re Risby*,
   No. 4:08–mp–101 E, 2008 WL 116701 (Bankr. E.D. Ark. Jan. 7, 2008) ...........................28

*In re Sharon Steel Corp.*,
   871 F.2d 1217 (3d Cir. 1989)...............................................................................1

*In re Supplement Spot, LLC*,
   Bankr. No. 06–35903–H4–11, 2009 WL 2006834 (Bankr. S.D. Tex. July 8, 2009) ..............28

*In re Teleglobe Commc'ns Corp.*,
   493 F.3d 345 (3d Cir. 2007)...............................................................................28

*In re Visteon Corp.*,
   2010 U.S. Dist. LEXIS 5461 (Bankr. D. Del. Apr. 9, 2010) .......................................32

*Jacques H. Geisenberger, Jr., P.C. v. DeAngelis*,
   Civil Action No. 1:10-CV-01660, 2011 WL 4458779 (M.D. Pa. Sept. 23, 2011) .................28

*Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc.*,
   458 F.3d 244 (3d Cir. 2006).................................................................10, 12, 13, 14

*John Crane, Inc. v. Linkus*,
   988 A.2d 511 (Md. Ct. Spec. App. 2010) ...............................................................4

*Lans v. Adduci Mastriani & Schaumberg L.L.P.*,
   786 F. Supp. 2d 240 (D.D.C. 2011) .....................................................................16

*LEAP Sys., Inc. v. MoneyTrax.*,
   638 F.3d 216 (3d Cir. 2011).....................................................................1, 20, 22

*Littlejohn v. BIC Corp.*,
   851 F.2d 673 (3d Cir. 1988).................................................................................22

*Lynne Carol Fashions, Inc. v. Cranston Print Works Co.*,
   453 F.2d 1177 (3d Cir. 1972).............................................................................15

*Nixon v. Warner Commc'ns, Inc.*,
   435 U.S. 589 (1978).............................................................................19, 22, 27, 30

*PAETEC Commc'ns, Inc. v. MCI Commc'ns Servs., Inc.*,
   712 F. Supp. 2d 405 (E.D. Pa. 2010) ...................................................................15

*Pansy v. Borough of Stroudsburg*,
   23 F.3d 772 (3d Cir. 1994)...............................................................................30

*Parklane Hosiery Co. v. Shore*,
   439 U.S. 322 (1979)................................................................14

*Peloro v. United States*,
   488 F.3d 163 (3d Cir. 2007).................................................. *passim*

*Rutherford v. Owens-Illinois, Inc.*,
   941 P.2d 1203 (Cal. 1997) .......................................................4

*United States v. Amodeo*,
   71 F.3d 1044 (2d Cir. 1995)..................................................20

*United States v. Smith*,
   123 F.3d 140 (3d Cir. 1997)..................................................14

*United States v. Smith*,
   776 F.2d 1104 (3d Cir. 1985).................................................20

*Wallace v. United Parcel Service*,
   387 F. App'x 127 (3d Cir. 2010) ...........................................17

*Walsh v. Quinn*,
   359 F. App'x 273 (3d Cir. 2009) ...........................................15

*Zolfo, Cooper & Co. v. Sunbeam-Oster Co., Inc.*,
   50 F.3d 253 (3d Cir. 1995)......................................................1

**DOCKETED CASES**

*In re Flintkote Co.*,
   No. 11-1138 (D. Del.) ......................................................26, 27

*In re Garlock Sealing Techs., LLC*,
   No. 10-31607 (Bankr. W.D.N.C.)......................................... *passim*

*In re Pittsburgh Corning Corp.*,
   No. 00-22876 (Bankr. W.D. Pa.) .......................................... *passim*

**STATUTES**

11 U.S.C. § 107..................................................................1, 30

11 U.S.C. § 107(a) ....................................................10, 22, 28, 29

11 U.S.C. § 107(b) ..........................................10, 28, 30, 31, 32

11 U.S.C. § 107(c) ....................................................17, 18, 28

11 U.S.C. § 328(c) ..............................................................28

11 U.S.C. § 524(g) ................................................................................................................7, 26

**OTHER AUTHORITIES**

Fed. R. Bankr. P. 2019 ................................................................................................... *passim*

Fed. R. Bankr. P. 9018 ..........................................................................................................31

Collier on Bankruptcy ..........................................................................................................24

Collier Bankruptcy Manual ..................................................................................................29

Restatement (Second) of Judgments § 27 (1982) ................................................................16

## STATEMENT OF THE ISSUES

Whether the Bankruptcy Court abused its discretion by denying Garlock access to the Rule 2019 Exhibits under the procedure that was affirmed on appeal by this Court and by the Third Circuit?[1]

Whether Garlock's most recent attempt to gain access to the Rule 2019 Exhibits — the one on appeal to this Court — is barred by collateral estoppel and/or *res judicata*?

## STANDARD OF REVIEW

In reviewing bankruptcy court decisions, the district court applies a clearly erroneous standard to findings of fact, conducts plenary review of conclusions of law, and must break down mixed questions of law and fact, applying the appropriate standard to each component. *In re Sharon Steel Corp.*, 871 F.2d 1217, 1222 (3d Cir. 1989). Decisions to protect judicial records from public disclosure under 11 U.S.C. § 107 are subject to review for abuse of discretion. *See In re Cont'l Airlines*, 150 B.R. 334, 338 (D. Del. 1993). Denials of requests to permit access to judicial records are also reviewed for abuse of discretion. *See LEAP Sys., Inc. v. MoneyTrax.*, 638 F.3d 216, 220 (3d Cir. 2011). A bankruptcy court decision constitutes an abuse of discretion only if that court fails to apply the proper legal standards or procedures, or bases its decision on clearly erroneous findings of fact. *See, e.g.*, *Zolfo, Cooper & Co. v. Sunbeam-Oster Co., Inc.*, 50 F.3d 253, 257 (3d Cir. 1995); *In re Metro Transp. Co.*, 107 B.R. 50, 51–52 (E.D. Pa. 1989).[2]

---

[1]     Garlock complains about the ruling that it did not have standing below. But Garlock fully participated in the briefing and argument before Judge Fitzgerald (nor does it argue to the contrary), so even if it were correct that it did have standing, it has not shown any prejudice from Judge Fitzgerald's post-argument ruling in that regard.

[2]     When decisions regarding the right to access judicial records are not made on the basis of first-hand observations or direct contact with the litigation, some courts have noted that "[t]he *(Footnote continued on next page.)*

## STATEMENT OF THE CASE

Garlock Sealing Technologies LLC ("Garlock"), an entity that is itself in bankruptcy and therefore protected from litigation by the automatic stay, has made previous attempts through discovery processes in its own bankruptcy case, pending in the Western District of North Carolina, to launch a campaign for unwarranted information against asbestos victims and their lawyers, whom it apparently views with hostility. As noted by Judge Fitzgerald in her decision below (the "Second Access Decision"), such attempts have been reined in by Judge Hodges, the judge presiding over Garlock's bankruptcy. Memorandum Opinion & Order at 26-27, *In re Pittsburgh Corning Corp.*, No. 00-22876 (Bankr. W.D. Pa. Oct. 7, 2011) [Dkt. No. 8488] (hereinafter "Mem. Op."). Garlock's attempt to evade the jurisdiction of the court overseeing its bankruptcy by seeking vast quantities of similar information through a motion for access[3] directed to Judge Fitzgerald was properly rejected by her.[4]

---

*(Footnote continued from previous page.)*

balancing of the factors for and against access . . . is not generally accorded the narrow review reserved for discretionary decisions based on first-hand observations." *Bank of Am. Nat'l Trust & Sav. Ass'n v. Hotel Rittenhouse Assocs.*, 800 F.2d 339, 344 (3d Cir. 1986) (citation omitted). Here, the Bankruptcy Court's decision was made on both first-hand knowledge and direct contact with the cases. That court also brought to bear its extensive knowledge of the "complexities of mass tort litigation" gained by presiding over all of these asbestos bankruptcies and devising the 2019 Orders whose interpretation and application are integral to the decision appealed from. *In re Kaiser Aluminum Corp.*, 327 B.R. 554, 559 (D. Del. 2005).

[3]     Amended Motion of Garlock Sealing Technologies, LLV for Orders Authorizing Access to 2019 Statements filed in this Court and for Related Relief, *In re Pittsburgh Corning Corp.*, No. 00-22876 (Bankr. W.D. Pa. Feb. 18, 2011) [Dkt. No. 8162] (hereinafter "Garlock's Second 2019 Motion"). The identical motion was filed in all 12 cases. The *Pittsburgh Corning* docket information is provided for ease of reference.

[4]     And Judge Hodges likewise stated that he would not delay proceedings for the estimation of Garlock's asbestos liability proceedings in his court pending the outcome of these appeals. He did not embrace Garlock's contention that the Rule 2019 Exhibits are useful or necessary for estimation. *See infra.* at 26.

Garlock's Second 2019 Motion sought documents submitted (but not filed on the docket) by hundreds of law firms in twelve different bankruptcy cases (seven of which are closed and the rest of which are in advanced stages) pursuant to prior orders that protected such information from public disclosure absent a motion and appropriate showing (the "Rule 2019 Orders").[5] The propriety of those orders has been established by prior appellate review, and Judge Fitzgerald acted well within her discretion in rejecting Garlock's attempt to misuse such documents for purposes inconsistent with Bankruptcy Rule 2019 and with her prior rulings ordering their submission.

Garlock devotes much of its statement of the case to attempts to minimize its own responsibility for asbestos claims. Those attempts are almost entirely based on a self-serving affidavit that was excluded from evidence below, an exclusion that Garlock did not appeal. *See* Garlock's Brief at 3-6, *In re Pittsburgh Corning Corp.*, No. 11-1406 (W.D. Pa. Dec. 12, 2011) [Dkt. No. 9] (hereinafter "Garlock's Br.") (purporting to cite Grant Affidavit as ROA 54); Mar. 28, 2011 Tr. at 143:18-145:14. That affidavit, and its contents, therefore are not before this Court

---

[5]     *See, e.g.*, Order Requiring Filing of Statements Pursuant to Fed. R. Bankr. P. 2019, *In re Pittsburgh Corning Corp.*, No. 00-22876 (Bankr. W.D. Pa. Aug. 26, 2004) [Dkt. No. 3527]; Amendatory Order Requiring Filing of Statement Pursuant to Fed. R. Bankr. P. 2019, *In re Pittsburgh Corning Corp.*, No. 00-22876 (Bankr. W.D. Pa. Aug. 27, 2004) [Dkt. No. 3530]; Revised Order Requiring Filing of Statements Pursuant to Fed. R. Bankr. P. 2019, *In re Pittsburgh Corning Corp.*, No. 00-22876 (Bankr. W.D. Pa. Oct. 22, 2004) [Dkt. No. 3667]; Supplement to Revised Order Requiring Filing of Statements Pursuant to Fed. R. Bankr. P. 2019, *In re Pittsburgh Corning Corp.*, No. 00-22876 (Bankr. W.D. Pa. June 17, 2005) [Dkt. No. 4347] Similar orders were entered in all twelve cases, with the possible exception of *Mid-Valley* (hereinafter "Rule 2019 Orders"). The *Pittsburgh Corning* docket information is provided for ease of reference.

and are inappropriately relied upon by Garlock in its appellant's brief (and would be entitled to no weight in any event).[6]

Notwithstanding Garlock's strained attempt to minimize its responsibility for asbestos diseases, many cases emphasize that there is no "safe" level of asbestos emissions and that each and every exposure to asbestos above background levels contributes to the risk of mesothelioma and lung cancer, and thus can be a substantial contributing factor in causing disease.  *See, e.g.*, *Estate of Hicks v. Dana Cos., LLC*, 984 A.2d 943, 957 (Pa. Super. Ct. 2009) (finding that "each and every exposure" to defendant's product was a substantial contributing factor to plaintiff's mesothelioma); *Blancha v. Keene Corp.*, Civ. A. No. 87-6443, 1991 WL 224573, at *6 (E.D. Pa. Oct. 24, 1991) (*every* occupational exposure to asbestos "is a substantial factor in bringing about mesothelioma").[7]

Garlock also makes various unsubstantiated assertions regarding alleged weaknesses of asbestos claims against it.  In addition to being completely irrelevant to the decision below or

---

[6]  *See, e.g.*, *In re Madera*, 586 F.3d 228, 234 (3d Cir. 2009) ("After the Bankruptcy Court issued its Memorandum Opinion, the Maderas did attach to their appellate brief in the District Court a settlement sheet which showed that they had purchased title insurance in association with the Option One loan.  However, because it was not 'made a part of the appellate record by the bankruptcy court' and 'because attaching a document to a brief does not make it part of the record,' the District Court chose to ignore this new evidence…This was not error."); *In re Foust*, 52 F.3d 766, 768 (8th Cir. 1995) (holding that district court erred by supplementing the bankruptcy court's record with new evidence).

[7]  *See also, e.g.*, *Rutherford v. Owens-Illinois, Inc.*, 941 P.2d 1203, 1214 (Cal. 1997) (plaintiff may meet the burden of proving exposure to defendant's product caused lung cancer by showing that in reasonable medical probability it was a substantial factor contributing to the plaintiff's or decedent's risk of developing cancer); *John Crane, Inc. v. Linkus*, 988 A.2d 511, 523 (Md. Ct. Spec. App. 2010) ("We conclude that lay testimony describing the amount of dust created by handling the products in question, coupled with expert testimony describing the dose response relationship and the lack of a safe threshold of exposure (above ambient air levels), was sufficient to create a jury question [as to whether the plaintiff's mesothelioma was caused by defendant's asbestos-containing products].").

any issue on appeal, those assertions simply repeat Garlock's side of arguments it made – and often lost – in thirty years of tort litigation before resorting to bankruptcy.[8]  Garlock's insistence that it is blameless rings hollow compared to the admitted fact that, before its bankruptcy, "[i]n the aggregate, Garlock has paid approximately $1.37 billion in indemnity payments and hundreds of millions in defense costs."[9]

Putting aside Garlock's irrelevant "spin" regarding its own asbestos liability, this case is about whether Garlock is entitled to get access to certain documents submitted to the clerk, but not filed on the docket, in twelve bankruptcy cases overseen by Judge Fitzgerald, three of which are at issue on this appeal, and the other nine of which are before Judge Stark of the United States District Court for the District of Delaware in a parallel appeal.  Those documents are Rule 2019 Exhibits that were submitted to the clerk in those twelve bankruptcies pursuant to the Rule 2019 Orders entered by Judge Fitzgerald long ago.  Those Rule 2019 Orders provided for the filing of Rule 2019 Statements[10] that identified the name and address of the filing law firm, and

---

[8]     *See, e.g.*, Information Brief of the Official Committee of Asbestos Personal Injury Claimants at 16-23, 42-55, 59-62, 72-75 & 79-88, *In re Garlock Sealing Technologies, LLC*, No. 10-31607 (Bankr. W.D.N.C. Aug. 30, 2010) [Dkt. No. 452].

[9]     *See* Information Brief of Garlock Sealing Technologies LLC at 1-2, *In re Garlock Sealing Technologies., LLC*, No. 10-31607 (Bankr. W.D.N.C. June 7, 2010) [Dkt. No. 24].

[10]    When a statement under Rule 2019 is required, the Rule itself instructs that the statement should contain:

> (1) the name and address of the creditor or equity security holder; (2) the nature and amount of the claim or interest and the time of acquisition thereof unless it is alleged to have been acquired more than one year prior to the filing of the petition; (3) a recital of the pertinent facts and circumstances in connection with the employment of the entity * * *; and (4) with reference to the time of the employment of the entity, the organization or formation of the committee, * * * the amounts of claims or interests owned by the entity, * * * the times when acquired,

*(Footnote continued on next page.)*

for the submission to the clerk's office of Rule 2019 Exhibits containing additional information. The Rule 2019 Exhibits include (1) the names and addresses of the clients of the submitting attorney; (2) exemplars or actual copies of the relevant retention agreements (3) identification of disease; (4) claim amounts if liquidated; and (5) sometimes social security numbers.  The procedure set forth by Judge Fitzgerald in her Rule 2019 Orders has twice been reviewed and approved by higher courts.  *See In re Pittsburgh Corning Corp.*, No. 04-1814, 2005 WL 6128987, at *10 (W.D. Pa. Sept. 27, 2005), *aff'd*, 260 F. App'x 463 (3d Cir. 2008); *In re Kaiser Aluminum Corp.*, 327 B.R. 554 (D. Del. 2005).

Garlock's brief discusses certain prior comments by the Bankruptcy Court — which are quoted in the 2005 District Court decision in *Pittsburgh Corning* — that rejected challenges to Rule 2019 Orders.  It neglects to note, however, other comments making clear that the process set up by those Orders required the filing of a motion by anyone seeking access to the Rule 2019 Exhibits "telling me why you want it . . . . it seems to me that requiring somebody to show me how the information is necessary, relevant, whatever term you wish to choose in a motion is not violating anybody's substantial rights."  2005 WL 6128987, at *4.  That process and its requirements have been affirmed both by this Court and by the Third Circuit itself, and are not reasonably open to question on this appeal.

---

*(Footnote continued from previous page.)*

the amounts paid therefor, and any sales or other disposition thereof.  * * * The statement shall include a copy of the instrument, if any, whereby the entity is empowered to act on behalf of creditors or equity security holders.

Fed. R. Bankr. P. 2019.

Nor, in spite of Garlock's suggestions to the contrary, was the *Kaiser* decision premised solely on a lack of standing. Instead, the Court found "[i]n the alternative, even if the Court concludes that Appellants have standing to challenge the Revised Rule 2019 Orders, the Court concludes that the Bankruptcy Court did not err in . . . restricting access to the Rule 2019 information." *Kaiser*, 327 B.R. at 559. As the Delaware District Court then held, "the Bankruptcy Court is regulating access to the information because of privacy concerns" and "Judge Fitzgerald's Rule 2019 Orders strike the appropriate balance between maintaining the public's right to access the Rule 2019 information and ensuring that the information is not misused." *Id.* at 560. These rulings cannot be disregarded.

In her recent decision, Judge Fitzgerald also gave significant attention to the background of Rule 2019, and specifically addressed its implementation in bankruptcy cases and under her earlier Rule 2019 Orders. Mem. Op. at 11-14. She noted that "Rule 2019 is not a discovery tool but is to ensure that plans are negotiated and voted on by those authorized to act on behalf of real parties in interest *in a case*." *Id.* at 13.[11] She also noted that "notwithstanding the use of the word 'creditor' in Rule 2019, individuals seeking legal counsel with respect to asbestos exposure may or may not have current claims and may or may not ever qualify as a claimant under § 524(g). Nonetheless, they are represented by an attorney who is required to file a 2019 statement listing all those he represents who are or may be claimants, even if the claims are never allowable or allowed." *Id.* at 12. In other words, Judge Fitzgerald herself recognizes that under the Rule 2019 Orders that she entered, the Rule 2019 Exhibits do not demonstrate that those

---

[11]     The court in *In re Premier Int'l Holdings, Inc.*, 423 B.R. 58, 65-74 (Bankr. D. Del. 2010), delved extensively into the history and purpose of Rule 2019. After an exhaustive analysis, the *Premier* court concluded that the rule was crafted to regulate so-called "protective committees" that no longer exist, and whose former powers can no longer be exercised in any event given various subsequent revisions to the Bankruptcy Code. *Id.* at 73.

listed within necessarily have "claims" or are "creditors," and thus that those Exhibits cannot serve Garlock's stated purposes, and could not do so even if those purposes were otherwise proper (which they are not).

Under revised Rule 2019, effective December 1, 2011, it has also become clear that lawyers for asbestos claimants are not even required to file Rule 2019 Statements (or submit Rule 2019 Exhibits) merely because of their passive appearance in the case. *See, e.g.*, Rule 2019 ("'represents' means to take a position before the court") & advisory committee's notes ("The advisory committee also added a definition of 'represent' or 'represents' in subdivision (a)(2) that limits the application of the rule to groups, committees, and entities taking a position before the court or soliciting votes on a plan. This revision excludes from the rule those whose involvement in a case is merely passive. The revision addresses concerns expressed during the public comment period that the rule's disclosure requirements should not be triggered when, for example, a law firm represents more than one client with respect to a chapter 11 case but does not appear in court to seek or oppose relief on behalf of more than one of those clients.").

Garlock, a stranger to the twelve bankruptcy cases, is attempting to misuse Rule 2019 for purposes it was never intended to serve — fishing-expedition discovery premised on unsupported allegations of widespread fraud and divorced from any connection with the purposes of Rule 2019 or with the above-captioned cases.[12] Notably, the attempts below whose rejection Garlock now appeals were not Garlock's first attempt to get access to Rule 2019 Exhibits. As set forth in Judge Fitzgerald's opinion, Garlock made an earlier motion for the

---

[12]     The gross overbreadth of, and suspect motivations behind, Garlock's Second 2019 Motion are also made evident by the fact that Garlock's request was not even limited to the data of those who have asserted claims against it.

2019 Exhibits[13] in the *Pittsburgh Corning* case, and she denied it, while acknowledging that

Garlock would remain free to file a motion for information about a *specific* creditor if it

identified a need for particulars about *that* creditor, and that she would entertain such a motion if

and when made.  Mem. Op. at 13.  Importantly, Garlock *did not appeal* that earlier denial of

blanket access to the Rule 2019 Exhibits.  For Garlock to come back now and demand such

material again is not only redundant, it is barred by collateral estoppel and *res judicata*.[14]

To the best of the Appellee Official Committees of Asbestos Claimants in the Flintkote,

Grace, NARCO and Pittsburgh Corning bankruptcy cases (the "ACCs" or "ACC Appellees")

knowledge, during all of the many years of asbestos bankruptcies and related litigation, no one

other than Garlock has ever sought Rule 2019 Exhibits from cases in which it was not a

participant, and certainly not in twelve such cases at once.  Especially given the well-worn

history of these bankruptcies and the governing Rule 2019 Orders, Garlock's attempt to get an

unwarranted second bite at the apple should be rejected.  Judge Fitzgerald acted well within her

discretion in considering the countervailing factors and protecting the Rule 2019 Exhibits from

disclosure to Garlock.  The ACCs respectfully request that her ruling be affirmed, and Garlock's

appeal dismissed.


## SUMMARY OF ARGUMENT

Garlock appeals from the Bankruptcy Court's denial of its motion to gain access to Rule

2019 Exhibits filed by counsel for asbestos victims in twelve different bankruptcy cases pursuant

---

[13]       *See* Motion of Garlock Sealing Technologies, LLC for Order Authorizing Access to
Certain 2019 Statements Filed in Case, *In re Pittsburgh Corning Corp.*, No. 00-22876 (Bankr.
W.D. Pa. Nov. 19, 2009) [Dkt. No. 7159] ("Garlock's First 2019 Motion").

[14]    *See* Part I, *infra*.

to Bankruptcy Rule 2019 and the Bankruptcy Court's prior orders.  As Garlock had previously

sought such documents in one of the cases, and had its prior attempt rejected by the Bankruptcy

Court, its current attempt is barred by collateral estoppel and *res judicata*.

The Bankruptcy Court's holding that the Rule 2019 Exhibits were deserving of protection

for privacy reasons was consistent with its entry of the governing Rule 2019 Orders and well-

supported.  The Bankruptcy Court also analyzed Garlock's acknowledged reasons for demanding

the Rule 2019 Exhibits under the facts and circumstances, and properly concluded that Garlock's

purposes were improper.

Finally, Garlock failed to demonstrate that Section 107(a) even applies to its request for

the Rule 2019 Exhibits, although those documents are protectible both for the reasons above and

because they are confidential commercial information under Section 107(b)(1) in any event.

## ARGUMENT

## I.    GARLOCK'S ATTEMPT TO GET THE RULE 2019 EXHIBITS IS BARRED BY COLLATERAL ESTOPPEL AND *RES JUDICATA*

### A.    Collateral Estoppel Blocks Garlock from Seeking the Rule 2019 Exhibits Because Its Previous Attempt to Access the Exhibits Was Denied

Issue preclusion, or collateral estoppel, prevents a party from re-litigating an issue that it

has already litigated.  Collateral estoppel requires that "(1) the identical issue was previously

adjudicated; (2) the issue was actually litigated; (3) the previous determination was necessary to

the decision; and (4) the party being precluded from relitigating the issue was fully represented

in the prior action."  *Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc.*, 458 F.3d 244, 249 (3d

Cir. 2006) (citation omitted).  *See also Peloro v. United States*, 488 F.3d 163, 174-75 (3d Cir.

2007)  (citations omitted) ("The prerequisites for the application of issue preclusion are satisfied

when:  (1) the issue sought to be precluded [is] the same as that involved in the prior action; (2)

that issue [was] actually litigated; (3) it [was] determined by a final and valid judgment; and (4)

the determination [was] essential to the prior judgment.").

   In the proceedings before Judge Fitzgerald, appellees argued that her decision on

Garlock's most recent 2019 Motion was controlled by her previous ruling denying Garlock's

demand for Rule 2019 Exhibits in the *Pittsburgh Corning* case.  *See, e.g.*, Joinder and Objection

of Official Committees of Asbestos Claimants in the Flintkote, Grace, NARCO and Pittsburgh

Corning Bankruptcies to Garlock's Motion for Orders Authorizing Access to 2019 Statements

and Related Relief at 5, *In re Pittsburgh Corning Corp.*, No. 00-22876 (Bankr. W.D. Pa. Feb. 7,

2011) [Dkt. No. 8139] ("This Court has already made clear that attempts to seek Rule 2019

Statements for use in other cases violate the purpose of the Rule, and are inappropriate.") (citing

Hearing Transcript at 40, *In re Pittsburgh Corning Corp.*, No. 00-22876 (Bankr. W.D. Pa. Jan.

13, 2010) [Dkt. No. 7422]).[15]  Judge Fitzgerald referenced that prior order and decision in

rebuffing Garlock's second attempt to get those documents, albeit this time in eleven other cases

as well as in *Pittsburgh Corning*.  Mem. Op. at 8 ("the same rationale applies" to deny access to

the statements).

---

[15]    While the phrase "collateral estoppel" was not used below, the concept of the prior
decision governing the current outcome was clearly expressed, which is sufficient for an
appellate court to consider the issue.  *See Cmty. State Bank v. Strong*, 651 F.3d 1241, 1261 n.17
(11th Cir. 2011) (addressing the question of preclusion and holding that "[a]lthough Strong failed
to use the words 'res judicata' or 'collateral estoppel,' we nonetheless find that Strong has
sufficiently raised the issue of preclusion such that this Court may address it.").  Moreover, as
noted elsewhere in this brief, an appellate court can affirm on any basis, even one not reached by
the district court.  *See* Section IV, *infra*; *see also Clements v. Airport Auth. of Washoe Cnty*, 69
F.3d 321, 330 (9th Cir. 1995) (applying collateral estoppel *sua sponte* and explaining that "[i]n
issue preclusion, the only litigation barred is the re-litigation of an issue that has been *actually*
litigated and *necessarily* decided.  Where the plaintiffs have had a full and fair opportunity to
actually litigate the issue and did in fact litigate it, they cannot ordinarily be prejudiced by
subsequently being held to the prior determination.") (emphasis in original).

In its first attempt to gain access to the Rule 2019 Exhibits in *Pittsburgh Corning,* Garlock raised the issue of whether it should have access to Rule 2019 Exhibits.  *See* Garlock's First 2019 Motion.  Judge Fitzgerald heard oral argument, and then denied Garlock's motion. *See* Order Denying Expedited Motion of Garlock Sealing Technologies, LLC for Order Authorizing Access to Certain 2019 Statements Filed in Case at 3, *In re Pittsburgh Corning, Corp.*, No. 00-22876 (Bankr. W.D. Pa. March 25, 2010) [Dkt. No. 7579] (hereinafter "First Access Decision").  Garlock did not appeal from that order.  Under Third Circuit precedent, the First Access Decision blocks Garlock's bid for Rule 2019 Exhibits  by operation of collateral estoppel.

First, the identical issue was adjudicated previously.  *Jean Alexander Cosmetics, Inc.*, 458 F.3d at 249; *Peloro*, 488 F.3d 174-75.  In *Pittsburgh Corning*, Garlock sought "all 2019 Statements, with exhibits, filed in the Chapter 11 Case by [certain law firms]" representing asbestos claimants.  Garlock's First 2019 Motion at 5.  The Bankruptcy Court denied that request.  First Access Decision at 3.  Here, Garlock has again requested "access to exhibits (the '2019 Exhibits') to statements filed pursuant to Rule 2019 … by law firms representing asbestos personal injury claimants."  Garlock's Br. at 1.  The only difference is that Garlock sought *broader access* to the Exhibits, from other cases and therefore from more law firms.  And, once again, the Bankruptcy Court denied Garlock's motion. Mem. Op. at 27.

Next, the issue must actually have been litigated.  *Jean Alexander Cosmetics, Inc.*, 458 F.3d at 249; *Peloro*, 488 F.3d 174-75.  This requirement is clearly met.  As in the recent decision, the issue under consideration in the prior proceeding was whether Garlock should have access to the Rule 2019 Exhibits submitted to the clerk's office.  *See* Garlock's First 2019 Motion at 5; Hearing Transcript at 34:20-22, *In re Pittsburgh Corning Corp.*, No. 00-22876

(Bankr. W.D. Pa. Jan. 13, 2010).  There was oral argument on that precise question.  *Id*. at 34:7-66:25.

The determination on the issue to be precluded must also have been necessary to the prior decision.  *Jean Alexander Cosmetics, Inc.*, 458 F.3d at 249; *Peloro*, 488 F.3d 174-75.  As Garlock's demand in the first *Pittsburgh Corning* proceeding was specifically for access to Rule 2019 Exhibits (Garlock's First 2019 Motion at 5), the denial of that request was not only necessary to the prior decision, it was at the heart of it.  First Access Decision at 3.

The other factor articulated by the Third Circuit in *Peloro*, 488 F.3d at 175, is that the issue was determined by a final and valid judgment.  Here, the Bankruptcy Court earlier in *Pittsburgh Corning* issued an order which squarely rejected Garlock's Motion.  First Access Decision at 3.  A judgment need not be "final in the sense of being appealable" for collateral estoppel purposes.  *In re Brown*, 951 F.2d 564, 569 (3d Cir. 1991).  Rather, "the doctrine of collateral estoppel applies whenever an action is 'sufficiently firm to be accorded conclusive effect.'"  *Id.*  In *Brown*, the court advised that "[i]n determining whether the resolution was sufficiently firm, the second court should consider whether the parties were fully heard, whether a reasoned opinion was filed, and whether that decision could have been, or actually was, appealed."  *Id.  See also Henglein v. Colt Indus. Operating Corp.*, 260 F.3d 201, 210 (3d Cir. 2001) (citation omitted) (stating that finality in the context of issue preclusion "is a more 'pliant' concept than it would be in other contexts").  With respect to the First Access Decision, the ruling was firm, the parties were fully heard, and Garlock could have appealed the decision, but did not.

Garlock itself asserts that "Orders either granting or, as in this case, denying access to court proceedings or records are appealable as final orders. . . ."  Garlock's Br. at 1 (citing

*United States v. Smith*, 123 F.3d 140, 145 (3d Cir. 1997).  Here, as stated above, Garlock was

fully heard previously, and Judge Fitzgerald entered an order and opinion denying access.[16]

Garlock did not appeal.

Finally, to be precluded from relitigating an issue due to collateral estoppel, a litigant

must have been fully represented in the prior action.  *Jean Alexander Cosmetics, Inc.*, 458 F.3d

at 249.  Garlock was fully represented in the prior action.  It appeared and was represented by the

same counsel that represents it in this proceeding, Garland Cassada.  *See* Hearing Transcript at

7:6-8, 34:16-19, *In re Pittsburgh Corning Corp.*, No. 00-22876 (Bankr. W.D. Pa. Jan. 13, 2010).

Garlock briefed the issue of whether it should have access to the Rule 2019 exhibits, and Mr.

Cassada had a full opportunity to argue Garlock's position before Judge Fitzgerald at that time.

*See, e.g.*, *id.*, at 41:08-49:02.

Although "[i]n its classic form, collateral estoppel . . . required 'mutuality'−i.e., that the

parties on both sides of the current proceeding be bound by the judgment in the prior proceeding

. . . [u]nder the modern doctrine of non-mutual issue preclusion . . . a litigant may also be

estopped from advancing a position that he or she has presented and lost in a prior proceeding

against a different adversary."  *Peloro*, 488 F.3d at 175, citing *Blonder-Tongue Labs., Inc. v.*

*Univ. of Ill. Found.*, 402 U.S. 313, 324 (1971), *aff'd*, 465 F.2d 380 (7th Cir. 1972); *see also*

*Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 324, 326-33 (1979) (recognizing legitimacy of

nonmutual offensive collateral estoppel as applied to give preclusive effect to previous

---

[16]     Judge Fitzgerald stated in her order that "the Motion is DENIED without prejudice to a request for access to information contained in a specific 2019 Statement as to a particular client in specific instances of need or cause."  First Access Decision at 3.  This makes clear that she was denying Garlock's blanket request for 2019 Exhibits outright, and restricting both the grounds for, and the permissible scope of, any further motion.  Garlock's Second 2019 Motion, the denial of which is before this Court in this appeal, flouts that prior (and unappealed) Order.

judgment); *PAETEC Commc'ns, Inc. v. MCI Commc'ns Servs., Inc.*, 712 F. Supp. 2d 405, 417 (E.D. Pa. 2010) (same).  The Third Circuit has "adopted a rather expanded view regarding the application of collateral estoppel, and has, in many situations, dispensed with the requirement of mutuality."  *Lynne Carol Fashions, Inc. v. Cranston Print Works Co.*, 453 F.2d 1177, 1181 (3d Cir. 1972) (citation omitted).

Here, Garlock faces the same parties that opposed it as to the earlier *Pittsburgh Corning* decision, as well as other parties implicated by Garlock's expansion of its Rule 2019 demands to sweep in other cases.  But this does not affect the underlying fact critical to the application of collateral estoppel – that Garlock advanced the same position earlier in *Pittsburgh Corning* and lost.  Even if none of the parties were the same (which they are), Garlock would be estopped from advancing its position that it should have blanket access to Rule 2019 statements.  *See, e.g.*, *Walsh v. Quinn*, 359 F. App'x 273, 275 (3d Cir. 2009) (holding that the result of a previous lawsuit "satisfie[d] the prerequisites for application of issue preclusion . . . [u]nder non-mutual issue preclusion" to the plaintiff's later suit involving conspiracy claims against new defendants, and concluding that "inasmuch as [the plaintiff] had a full and fair opportunity to litigate the conspiracy issue and received a judgment on the merits, that claim is now also barred against [the defendants named in the new action] as well").

In *Peloro*, the Third Circuit held that a plaintiff's claims for conversion against a Securities Investor Protection Act ("SIPA") trustee were barred by non-mutual collateral estoppel. 488 F.3d at 175-76.  The Court noted that although only certain of the securities involved in the conversion action had been involved in the earlier bankruptcy litigation, "the issue decided by the Bankruptcy Court–whether the certificated securities delivered by [the plaintiff] to [the brokerage firm] and seized by the FBI were 'properly customer property under

SIPA'−is broad enough to preclude relitigation of the issue as to all of the certificated securities." *Id.* at 175 n.12.[17]   The court concluded that, "because [the plaintiff] was bound by the Bankruptcy Court's decision after receiving a full and fair opportunity to litigate the status of the bonds, the principle of defensive non-mutual issue preclusion bars her from relitigating the issue against [the trustee] as well."  488 F.3d at 176.

Beyond question, the issue litigated in the First Access Decision in *Pittsburgh Corning* was part and parcel of the issue litigated in the Second Access Decision in *Pittsburgh Corning* and the other eleven cases.  As in *Peloro*, the first decision on whether Garlock should have access to Rule 2019 Exhibits addressed a subset of the Rule 2019 Exhibits Garlock pursued in its Second 2019 Motion.  But the decision – that Garlock was not entitled to such access – applies equally to *all* of the Rule 2019 Exhibits.  Garlock has never suggested the contrary.

B.   Garlock's Attempt to Seek the Rule 2019 Exhibits is also Barred by *Res Judicata*

Just as Garlock's request for the Rule 2019 Exhibits is blocked by collateral estoppel, it is also barred by *res judicata*.  The doctrine of *res judicata*, or claim preclusion, bars re-litigation of a claim that has already been determined on the merits by a court of competent jurisdiction.  It "requires a showing that there has been (1) a final judgment on the merits in a prior suit involving (2) the same claim and (3) the same parties or their privies."  *EEOC v. U.S. Steel Corp.*, 921 F.2d 489, 493 (3d Cir. 1990).  A "defendant not named in a prior suit may establish an 'identity of parties' and thus invoke *res judicata* by demonstrating that it is in privity with a

---

[17]     The *Peloro* court cited the Restatement (Second) of Judgments § 27, cmt. c (1982), which provides that, in considering the "[d]imensions of an issue" for purposes of issue preclusion, a court should ask, *inter alia*, "Is there a substantial overlap between the evidence or argument to be advanced in the second proceeding and that advanced in the first?" and "How closely related are the claims involved in the two proceedings?"

party named in the prior suit." *Lans v. Adduci Mastriani & Schaumberg L.L.P.*, 786 F. Supp. 2d 240, 307 (D.D.C. 2011).

As with collateral estoppel, the Third Circuit takes a "broad view of what constitutes identity of causes of action [for the purposes of *res judicata*]−an essential similarity of the underlying events giving rise to the various legal claims." *Wallace v. United Parcel Serv.*, 387 F. App'x 127, 129 (3d Cir. 2010) (internal quotations omitted).

As discussed above, Garlock's First 2019 Motion for access to Rule 2019 Exhibits in *Pittsburgh Corning* resulted in a final judgment denying Garlock's request. *See* First Access Decision at 3. Garlock raised the same claim in its Second 2019 Motion, which was filed simultaneously in *Pittsburgh Corning* and another eleven cases. Once again, Garlock asserted that it should have access to Rule 2019 Exhibits filed by law firms representing asbestos claimants. *Compare* Garlock's First 2019 Motion at 5 *with* Garlock's Br. at 1. And the same parties are involved – Garlock on one side and a number of asbestos plaintiffs' counsel and the *Pittsburgh Corning* ACC on the other. That Garlock's expansive second request also triggered oppositions by ACCs in other bankruptcies does not alter the essential similarity of Garlock's claims in both instances. Judge Fitzgerald recognized as much. "At the time [in *Pittsburgh Corning*] the court was referring to actions against Garlock in the tort system but the same rationale applies to a claimant against Garlock in Garlock's bankruptcy." Mem. Op. at 8.

## II.    THE RULE 2019 EXHIBITS ARE PROTECTED FROM DISCLOSURE UNDER SECTION 107(C) AND ITS COMMON-LAW PREDECESSOR AS PRESENTING AN UNDUE RISK OF IDENTITY THEFT AND OTHER UNLAWFUL INJURY

Section 107(c)(1) provides that a bankruptcy court may, for cause, "protect an individual, with respect to [certain] types of information to the extent the court finds that disclosure . . . would create undue risk of identity theft or other unlawful injury to the individual or the

17

individual's property."  11 U.S.C. § 107(c)(1).  In its appellate brief, Garlock argues for the first

time that the Bankruptcy Court could not have protected the 2019 Exhibits under Section

107(c)(1) because the section was not added to the Bankruptcy Code until 2005, and does not

apply to any case filed prior to the section's enactment.  Garlock's Br. at 21.  Garlock did not

make this argument below.  Rather, before the Bankruptcy Court, Garlock contended only that

the 2019 Exhibits should not be protected under Section 107(c)(1) because their disclosure

would not pose an "undue risk of identity theft or other unlawful injury" to any individual, and

Garlock itself would not "steal the claimants' identity or cause them any unlawful injury."

Garlock's Second 2019 Motion at 21 ¶ 58.  Garlock has shifted ground and its new argument,

presented by an appellant for the first time on appeal, is precluded.  *In re Howard Komendant,*

*C.P.A., P.C.*, 2010 WL 2925167, at *2 (D.N.J. July 19, 2010) (noting, in an appeal from a

bankruptcy court decision, that an appellant's arguments would not be considered "for the first

time on appeal").

 The new argument is also irrelevant.  Garlock does not deny that privacy interests are

appropriately protectable with respect to documents sought in bankruptcy cases, including the

ones on appeal here.  Accordingly, whether those privacy interests are protectable under the

Section 107 codification of the common-law's privacy protections, or under the common law

itself, those privacy interests still justify protection of the Rule 2019 Exhibits.  The Bankruptcy

Court found that the potential disclosure of the Rule 2019 Exhibits implicated privacy interests.

Mem. Op. at 16-17 ("[D]isclosure would risk injury to the privacy interests of those listed in the

2019s").  In fact, the Bankruptcy Court's earlier 2019 Orders regulated access to the 2019

Exhibits because of the "privacy concerns related to the electronic case filing system," among

other things, and the District Court in Delaware specifically upheld that ground of decision. *Kaiser*, 327 B.R. at 560 (D. Del. 2005).

As Garlock itself has also recognized, Garlock's Br. at 19-20, "the Court must balance the strong common law presumption of access 'against the factors militating against access'" in Section 107 cases. *In re Peregrine Sys., Inc.*, 311 B.R. 679, 689 (D. Del. 2004).[18] *See also Pittsburgh Corning Corp.*, 2005 WL 6128987, at *10 (Western Pennsylvania District Court ruling that, in response to a request for the Rule 2019 Exhibits, the Bankruptcy Court was free to hold that "countervailing concerns justify the continued protection of the information"); *In re Orion Pictures Corp.*, 21 F.3d 24, 26-27 (2d Cir. 1994); *In re Bennett Funding Grp., Inc.*, 226 B.R. 331, 336 (Bankr. N.D.N.Y. 1998) (noting that "if the information does not represent trade secrets or confidential research, development or commercial information, then whether to permit access to the information is a matter left to the Court's discretion," and "it requires the Court to examine the relevant facts and circumstances and then to balance the interests of the party opposing disclosure with that of the public.") (citations omitted).

Privacy interests are among the potentially countervailing factors weighing against public access. *Peregrine*, 311 B.R. at 690 ("The bankruptcy court was appropriately concerned with the privacy interests of third parties who were not before the court, and it is well established that a court has the power and discretion to strike a document in order to protect legitimate interests."). Given the history of the Rule 2019 Orders, privacy interests are certainly at stake here. *See Kaiser*, 327 B.R. at 560 (affirming Judge Fitzgerald's 2019 Orders where "the Bankruptcy Court

---

[18]    It is beyond dispute that the Bankruptcy Court, like "every court" has "supervisory power over its own records and files," and can use that power to protect its records and files from the risk of misuse. *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978). The court's power over its own records includes the authority to shield third parties' private information from public disclosure.

is regulating access to the information because of privacy concerns related to the electronic case filing system," and holding that "Judge Fitzgerald's Rule 2019 Orders strike the appropriate balance").

Indeed, courts have long recognized that protecting against the public disclosure of private information is a legitimate reason for regulating access to judicial records. *See, e.g.*, *LEAP Systems*, 638 F.3d at 222 (holding that a significant "privacy interest" in maintaining the confidentiality of a settlement agreement outweighed any public right of access to the agreement); *United States v. Amodeo*, 71 F.3d 1044, 1050-51 (2d Cir. 1995) (citations omitted) ("privacy interests of innocent third parties . . . should weigh heavily in a court's balancing equation"); *United States v. Smith*, 776 F.2d 1104, 1111-12 (3d Cir. 1985) (holding that an individual's privacy or reputational interests defeated a media organization's constitutional right of access as well as the public's common law right of access to charging documents in a criminal proceeding). As the Delaware District Court found, in designing a process whereby members of the public could file a motion to request access to the 2019 Exhibits, the Bankrupty Court "str[uck] the appropriate balance between maintaining the public's right to access the Rule 2019 information and ensuring that the information is not misused." *Kaiser*, 327 B.R. at 560.

Here, the Bankruptcy Court properly weighed the privacy interests of clients of the law firms submitting Rule 2019 Exhibits against the public's interest in unfettered access to those materials. The Rule 2019 Exhibits include information such as the client's social security numbers, addresses and their medical information, information that is clearly sensitive and vulnerable to abuse. The public's interest in disclosure is minimal here—the parties are private entities, and their dispute has no impact on the public. Judge Fitzgerald did not abuse her discretion in protecting the Rule 2019 Exhibits from disclosure.

### III.   GARLOCK'S IMPROPER PURPOSES PRECLUDE IT FROM GAINING ACCESS TO THE RULE 2019 EXHIBITS

Throughout its brief, Garlock heavily relies on *In re Cendant*, 260 F.3d 183, 192-94 (3d Cir. 2001), as setting forth the appropriate framework for its motion to obtain the Rule 2019 Exhibits.  But *Cendant* was not a case regarding Rule 2019 submissions, nor did it involve the various factors at play in asbestos bankruptcies that the Bankruptcy Court properly considered in denying the Second 2019 Motion below and that were incorporated in its prior-issued and controlling Rule 2019 Orders.  To the contrary, *Cendant* was a class action case and expressly held that "because of the peculiar posture of class actions" and "because of the importance of the selection of lead counsel to class action plaintiffs" that "the test for overriding the right of access should be applied in this case with particular strictness."  *Id.* at 194.

In any event, the Bankruptcy Court properly set forth "compelling countervailing interests" of the sort that *Cendant* itself recognized.  These included the confidentiality concerns noted above and Garlock's improper purposes as analyzed below, and the consequent specific harms to asbestos victims and their lawyers.  Indeed, Judge Fitzgerald's Rule 2019 Orders in asbestos bankruptcies properly established a process and framework for weighing such competing considerations, as the affirming courts, including the Third Circuit, recognized.

### A.   Courts May Deny Access to Documents to Prevent Them from Being Used for Improper Purposes

Garlock does not deny that an improper purpose is an appropriate basis for a bankruptcy court to deny access to documents that might otherwise be available.  To the contrary, Garlock itself relies on cases that make clear that "[i]n limited circumstances, courts must deny access to judicial documents--generally where open inspection may be used as a vehicle for improper purposes." *Orion Pictures*, 21 F.3d at 27 (2d Cir. 1994) (citations omitted); *In re Cendant Corp.*,

260 F.3d 183, 194 (3d Cir. 2001) ("access has been denied where court files might have become

a vehicle for improper purposes") (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. at 589

(1978)); *Littlejohn v. BIC Corp.*, 851 F.2d 673, 678 (3d Cir. 1988) (same).[19]   Indeed, the District

Court for the District of Delaware relied on that very principle in a previous appeal of the Rule

2019 Orders that underlies the specific decision now appealed from.  "Although Section 107(a)

evidences a strong desire by Congress to preserve the public's right to access judicial records,

that right is not absolute.  Courts have supervisory power over their records and files and may

deny access to those records and files to prevent them from being used for an improper purpose."

*Kaiser*, 327 B.R. at 554, citing *Orion*, 21 F.3d at 24, and *Nixon*, 435 U.S. at 597-98 n.8.  Nor

does Garlock deny that a decision as to improper purpose is both fact-specific and within the

sound discretion of the bankruptcy court.

> B.    Garlock Acknowledged Its Purposes for Seeking the Rule 2019 Exhibits, and
>       Those Purposes Are Improper

Although Garlock claims that those objecting to its Second 2019 Motion "offered no

evidence" that its purposes in seeking the Rule 2019 Exhibits were improper, Garlock's Br. at

24, Garlock itself acknowledged its purposes in that Motion.  Those purposes were to fish for

far-fetched and implausible claims of fraud in other cases.  For example, Garlock claimed that it

"requires the 2019 statements and exhibits for use in its own bankruptcy case," allegedly because

"[b]y comparing these verified statements to discovery Garlock received over the past decade,

Garlock can prove the extent to which plaintiffs' firms were concealing evidence of alternative

exposures in order to inflate Garlock's settlement values."  Garlock's Second 2019 Motion at 11.

---

[19]    *Leap Systems, Inc. v. Moneytrax, Inc.*, a recent Third Circuit decision applying the
common law and cited by Garlock as governing here, further establishes that "improper purpose"
is an appropriate basis for denying access.  638 F.3d 216, 221 (3d Cir. 2011) (affirming District
Court's denial of motion to unseal).

Garlock also said that it "is investigating the possibility of damages actions against plaintiffs' firms or claimants to recoup settlements obtained through the concealment of exposure evidence," *id.*, and "[b]y comparing these 2019 exhibits verifying known exposures to the debtors' products, to the discovery Garlock was simultaneously receiving in the tort system, Garlock can determine whether lawyers and claimants were lying in one (or both) forums." *Id.* These justifications fail for several reasons, and Judge Fitzgerald did not abuse her discretion in holding that these are not proper purposes in these bankruptcy cases.

First, as already noted, Judge Fitzgerald previously found such purposes improper when she denied Garlock's First 2019 Motion in *Pittsburgh Corning* and held that it was not entitled to the Rule 2019 Exhibits. That ruling binds Garlock in all of the cases now on appeal, and conclusively establishes that Garlock's purposes here are improper. *See supra* Part I.

Second, Garlock did not have a sufficient basis to potentially support the appropriateness of its egregiously expansive request. In the *Pittsburgh Corning* case, the Third Circuit upheld the Bankruptcy Court's Rule 2019 order that (1) authorized the filing of exemplars, as opposed to actual copies, of the relevant empowering documents, and (2) permitted access to the Rule 2019 submissions only upon motion and order of the court. *In re Pittsburgh Corning Corp.*, 260 F. App'x 463 (3d Cir. 2008). In so doing, and in response to an argument by insurers that access to the Rule 2019 disclosures might enable them to reveal conflicts of interest on the part of asbestos plaintiffs' counsel, the Third Circuit expressly distinguished its earlier decision in *In re Congoleum Corp.*, 426 F.3d 675 (3d Cir. 2005), because in *Congoleum* "the facts necessary to find that an actual conflict of interest existed had already been developed and left no room for

23

speculation." *Pittsburgh Corning*, 260 F. App'x at 466 n.6. Garlock offered no such developed

facts for its grandiose requests but relied entirely on self-serving speculation.[20]

Garlock presented no factual record to Judge Fitzgerald that could support its

unprecedented requests now at issue. To the contrary, as shown by the Third Circuit's decision

in *Pittsburgh Corning*, speculative fishing expeditions such as that sought by Garlock here do

not justify requests for Rule 2019 disclosures.

Garlock's speculative and conclusory assertions regarding alleged wide-spread fraud are

utterly insufficient, and Judge Fitzgerald was well within her discretion to reject them. As she

noted, Garlock's allegations "are entirely a matter of conjecture and speculation. Garlock raises

the specter of a nationwide conspiracy by every law firm involved in each of these bankruptcy

cases, every attorney who represents asbestos tort victims in those firms, and every asbestos

personal injury victim (whether or not that victim was exposed to Garlock's products) to defraud

Garlock, without identifying even one of its creditors whose 2019 information it seeks." Mem.

Op. at 6-7.

Third, "[t]he purpose of Rule 2019 is to ensure that plans of reorganization are negotiated

and voted upon by people who are authorized to act on behalf of the real parties in interest."

*Kaiser*, 327 B.R. at 559 (citing 9 Lawrence P. King, et al., Collier on Bankruptcy § 2019.05[2]

(15th ed. 2004)). Rule 2019 is not meant as a weapon for debtors to use in inflicting costs and

---

[20]     The Third Circuit's criticism of the position taken by the insurers challenging the Rule 2019 Orders in *Pittsburgh Corning* applies with particular force to Garlock: "[t]hough they vaguely argue that the Rule 2019 Order limits their rights 'by preventing them from obtaining information that could reveal unethical procedures or conflicts of interests on the part of plaintiffs' lawyers' (Appellants' Br. 36), Appellants merely speculate that there are any unethical procedures or conflicts of interest to reveal. They do not point us to even one actual ethical violation or conflict of interest extant in the filings and have failed to investigate these issues so as to support their contention." *Pittsburgh Corning*, 260 F. App'x at 466.

burdens on creditors, nor as a one-sided discovery device.  Accordingly, a motion and proposed

order that invoke the Rule for such improper purposes should be summarily rejected.  Thus, in *In*

*re Premier Int'l Holdings, Inc.*, 423 B.R. 58, 75 (Bankr. D. Del. 2010), the court denied a motion

to compel performance of Rule 2019 obligations.  It observed: "the Official Committee, by filing

its motion, is clearly engaged in a litigation tactic to apply pressure on it[s] current adversary, the

Informal Committee of SFO Noteholders, as well as attempting to make an 'end run' around a

previous ruling denying the Official Committee's request for discovery seeking virtually the

same information."  *See also In re 50-Off Stores, Inc.*, 213 B.R. 646, 659-60 (Bankr. W.D. Tex.

1997) ("[u]nder the facts of this particular case, this Court believes that a litigant's seeking to

obtain information from a retention hearing involving the litigant's opposing counsel is an

'improper purpose' within the meaning of that term as used in *Nixon*, so that access should be

denied"); *In re Am. Bus. Fin. Servs., Inc.,* No. 05-10203, 2008 WL 3906894, at *5 (Bankr. D.

Del. Aug. 20, 2008) ("The Stipulated Protective Order allows the Trustee to use all of the

confidential documents in defending himself in this adversary proceeding.  His efforts to use

them in any other manner is not a legitimate purpose and therefore militates against disclosure.").

Garlock's Second 2019 Motion sought information for use in other cases as an end run

around properly-limited discovery.  Indeed, Judge Fitzgerald specifically found that the request

suffered from the same flaws as previous discovery that had been rejected by Judge Hodges in

Garlock's own bankruptcy proceeding, and rejected it in part for the same reasons.  Mem. Op. at

26-27.  And, while it now disclaims any parallel between discovery and its attempts to procure

the Rule 2019 Exhibits, Garlock itself expressly relied on a prior order from its own bankruptcy

court that permitted it to "conduct preliminary discovery related to estimation," Garlock's

Second 2019 Motion at ¶ 12, to support its most recent request for the Rule 2019 Exhibits in front of Judge Fitzgerald.

Fourth, Judge Fitzgerald also properly recognized that the Rule 2019 Exhibits could not serve Garlock's alleged purposes in any event but are irrelevant to estimation because those exhibits are about lawyers and their client lists — they are not evidence of whether their clients in a given case do or do not have a claim against that debtor.  In other words, the 2019 Exhibits simply do not "verify[] known exposures" as Garlock alleged below.  Garlock's Second 2019 Motion ¶ 16.  Accordingly, any contrast between those Exhibits and tort discovery in an effort to discern inconsistencies is meaningless and irrelevant.

> Thus, notwithstanding the use of the word 'creditor' in Rule 2019, individuals seeking legal counsel with respect to asbestos exposure may or may not have current claims and may or may not ever qualify as a claimant under §524(g).  Nonetheless, they are represented by an attorney who is required to file a 2019 statement listing all those he represents who are or may be claimants, even if the claims are never allowable or allowed.

Mem. Op. at 12.  *See also* Mem. Op. at 6 n.6 ("We note that the mere inclusion of a client on a 2019 in an asbestos case does not necessarily mean that the client filed or will file a claim or that any claim will be allowed once presented to the trust."); Mem. Op. at 8 ("2019 statements are representations by counsel to a court as to who their clients are.  The statements are not claims.").  The Bankruptcy Court for the Western District of North Carolina that oversees Garlock's own bankruptcy appears to agree, because as Garlock itself acknowledged in a recent appellate filing, that court has refused to delay its own estimation proceedings during Garlock's frolic and detour with respect to the Rule 2019 Exhibits at issue in these appeals: "the court warned Garlock that the estimation trial would not be delayed for the appellate process." Emergency Motion of Appellant Garlock Sealing Technologies, LLC (I) to Expedite Briefing

and Hearing on These Appeals, (II) to Bypass Appellate Mediation and (III) for Related Relief ¶ 14, *In re Flintkote Co.*, No. 11-1138 (D. Del. Dec. 6, 2011) [Dkt. No. 7].  Whatever unsupported contentions Garlock makes to the contrary, the court overseeing its bankruptcy clearly does not believe that the Rule 2019 Exhibits are necessary for estimation of Garlock's asbestos liabilities.

Most of the cases that Garlock relies upon in attempting to justify its purposes did not involve the question of improper purposes for seeking documents and thus are inapposite. Garlock also suggests that the *Nixon* case set forth a comprehensive list of improper purposes, and as Garlock's purposes are not on that list, they must be accepted as proper.  Garlock's Br. at 26 n.9, 28.  Garlock is wrong.  *Nixon's* list of improper purposes does not profess to be all encompassing, but is prefaced by a "[f]or example."  *Nixon*, 435 U.S. at 598.  The *Nixon* court also emphasized that "[i]t is difficult to . . . identify all the factors to be weighed in determining whether access is appropriate," and that "[t]he few cases that have recognized such a right [of access] do agree that the decision as to access is one best left to the sound discretion of the trial court, a discretion to be exercised in light of the relevant facts and circumstances of the particular case."  *Id.* at 598-99.  In other words, *Nixon* makes clear that potential countervailing factors weighing against public access, such as improper purposes, are not limited to its (or any other) list, but are to be determined in the first instance by the lower court acting in the exercise of its discretion and considering all of the relevant facts and circumstances.  Finally, one of the purposes specifically identified as improper in *Nixon* is making available "sources of business information that might harm a litigant's competitive standing."  *Id.*  As shown in Part IV.B. of this brief, that consideration fully applies here.[21]

---

[21]   Garlock states that "the Bankruptcy Court erred by denying Garlock access even to those 2019 Exhibits filed by law firms and claimants who did not object to the Access Motions." *(Footnote continued on next page.)*

## IV.   SECTION 107 DOES NOT SUPPORT GARLOCK'S ATTEMPTS TO REQUIRE THE PRODUCTION OF THE RULE 2019 EXHIBITS

There are two additional reasons that Garlock's appeals should be rejected.  While neither was expressly relied on by Judge Fitzgerald, this Court may affirm her decision on either or both of these grounds.  *See, e.g., In re Teleglobe Commc'ns Corp.*, 493 F.3d 345, 385 (3d Cir. 2007) ("it is firmly established that we may affirm on any ground supported by the record"); *Jacques H. Geisenberger, Jr., P.C. v. DeAngelis*, Civil Action No. 1:10-CV-01660, 2011 WL 4458779, at *8 n.14 (M.D. Pa. Sept. 23, 2011) ("The Bankruptcy Court did not cite 11 U.S.C. § 328(c) as a basis for its decision to disgorge fees.  Nonetheless, this court, exercising appellate jurisdiction, may affirm on this basis. It is an accepted tenet of appellate jurisdiction that we may affirm a judgment on any ground apparent from the record, even if the district court did not reach it.") (citation and internal quotation omitted).

### A.   Garlock Has Not Established the Applicability of Section 107(a)

By its plain terms, Section 107 applies only to papers "filed in a case" and on "the dockets of a bankruptcy court."  11 U.S.C. § 107(a); *see also In re Apex Oil Co.*, 101 B.R. 92, 98

---

*(Footnote continued from previous page.)*
Garlock's Br. at 35.  However, those law firms and claimants could certainly rely on the arguments filed by the ACCs, who represent the interests of the asbestos claimant constituencies, and those filed by other similarly situated entities.  It is also clear that the bankruptcy court has the power to protect information *sua sponte* even if *no* objections are filed.  *See, e.g., In re Risby*, No. 4:08-mp-101E, 2008 WL 116701 (Bankr. E.D. Ark. Jan. 7, 2008) (upon clerk's request for guidance, court ordered that 74 involuntary petitions filed by a prisoner should not be accepted or publicly docketed under § 107(c)); 11 U.S.C. § 107(b) ("[O]*n the bankruptcy court's own motion*, the bankruptcy court may protect an entity with respect to a trade secret or confidential research, development, or commercial information") (emphasis added); *In re Supplement Spot LLC*, Bankr. No. 06-35903-H4-11, Adversary No. 07-03019, 2009 WL 2006834 (Bankr. S.D. Tex. July 8, 2009) (court noting that it had discretion under §107(b) to *sua sponte* seal the documents).

(Bankr. E. D. Mo. 1989) ("The plain language of § 107 establishes standards only for those documents *which are filed with the court*."). It "does not extend to papers that are not filed in a case, such as pretrial discovery material and other materials that are not filed, or the documents an examiner may review in making a report to the court." 1 Alan Resnick & Henry J. Sommer, Collier Bankruptcy Manual ¶ 107.02[1], at 107-3 — 107-4 (4th ed. 2011). *See also In re Am. Bus. Fin. Servs., Inc.*, 2008 WL 3906894, at *2 (holding that because the "documents at issue were produced in discovery and have not been filed of record or used at trial . . . any public interest in matters which are part of the judicial record is not implicated here.").

Under the 2019 Orders in place in these cases, the Rule 2019 Exhibits that Garlock seeks were submitted to the clerk but were *not* filed on the public docket. To the contrary, the 2019 Orders made such information "submitted pursuant to the [] 2019 Orders unavailable on the public docket, except upon motion by a party and order of the Bankruptcy Court." *Kaiser*, 327 B.R. at 557. Garlock itself recognizes this in its brief to this Court. Garlock's Br. at 3 (noting that the Rule 2019 Exhibits were "submitt[ed] to the Clerk of the Bankrupty Court," and that the Bankruptcy Court "required that they be kept off the Bankruptcy Court's public docket.").

The Bankruptcy Court crafted these orders to balance the requirements of Rule 2019 and the nature of the asbestos bankruptcy cases involved against potential disclosure interests, and that court's approach was affirmed in two separate appeals. *Kaiser*, 327 B.R. at 560 (the 2019 Orders "strike the appropriate balance between maintaining the public's right to access the Rule 2019 information and ensuring that the information is not misused . . . the Bankruptcy Court did not err in declining to post the information on the electronic docket and in permitting access to that information by motion of the parties and order of the court."). By its own terms, Section 107(a) does not apply, and Garlock has not set forth any basis for its application here.

Under common law principles, the public right of access only attaches to a document if it is a "public record," which in turn depends on whether "a document has been filed with the court, or otherwise somehow incorporated or integrated into a district court's adjudicatory proceedings." *In re Cendant Corp*, 260 F.3d at 192 (citation omitted). Under this standard, documents are not judicial records to which the right attaches if they are "never filed with, interpreted or enforced by the district court." *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 781 (3d Cir. 1994). The Rule 2019 Exhibits were never incorporated into or referenced in any such adjudicatory proceedings by Judge Fitzgerald in the bankruptcy cases nor were they filed on the docket. Accordingly, they are not "public" or "judicial" records.

      B.      The Rule 2019 Exhibits are Protected from Disclosure under Section 107(b)(1) as Confidential Commercial Information

Section 107 codifies the common law regarding public access to judicial records, including the principle that the public's right of access is not absolute. *In re Joyce*, 399 B.R. 382, 386 & n.2 (Bankr. D. Del. 2009) (citing *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. at 597-98 (1978)). *See also In re Georgetown Steel Co., LLC*, 306 B.R. 542, 546 (Bankr. D.S.C. 2004) ("the Bankruptcy Code . . . recognizes that the public right to access is not absolute."). "While the exception ought, as the cases indicate, be sparingly applied, the very existence of the exception demonstrates Congress' anticipation that the administration of bankruptcy cases might, by their very nature, require special intervention to protect some kinds of information from dissemination to the world." *In re 50-Off Stores, Inc.*, 213 B.R. at 654. The statute provides for several exceptions to the public right of access, and § 107(b)(1) mandates the protection of certain types of information, including "confidential commercial information." It provides that upon the "request of a party in interest, the bankruptcy court shall, and on the bankruptcy court's

own motion, the bankruptcy court may . . . protect an entity with respect to a trade secret or

confidential research, development, or commercial information."[22]  Determinations as to whether

information falls within the ambit of Section 107(b)(1) are made on a case by case basis.  "The

court determines whether the subject documents fall within the provisions of § 107(b) and the

appropriate protective remedy if they do."  *In re Barney's, Inc.*, 201 B.R. 703, 707 (Bankr.

S.D.N.Y. 1996).

Confidential commercial information has been defined as "information which would

cause an unfair advantage to competitors by providing them information as to the commercial

operations" of the entity seeking the order, *In re Orion Pictures Corp.*, 21 F.3d at 27 (citations

omitted), and information that, if disclosed, would "have a 'chilling effect on [the entity's

business] . . . ultimately affecting the viability of [the entity].'"  *In re Borders Grp., Inc.*, No. 11-

10614 (MG), 2011 WL 6057993, at *3 (Bankr. S.D.N.Y. Dec. 7, 2011) (citation omitted).

The Rule 2019 Exhibits contain confidential commercial information.  This includes the

identity of the submitting law firms' clients, their addresses, and information regarding their

potential claims, which are protectable under Section 107(b)(1).  *See, e.g.*, *Georgetown Steel Co.,*

*LLC*, 306 B.R. at 548 (protecting the identification of key employees and the specific amounts

proposed to be paid to retain them as employees of the debtor under Section 107(b)(1)); *Borders*

---

[22]    Rule 9018 of the Federal Rules of Bankruptcy Procedure makes clear that there are no
procedural impediments to a court's invocation of Section 107(b).  In relevant part, Rule 9018
provides:

> On motion or on its own initiative, with or without notice, the court
> may make any order which justice requires . . . to protect the estate
> or any entity in respect of a trade secret or other confidential
> research, development, or commercial information . . . contained in
> any paper filed in a case under the Code.

Fed. R. Bankr. P. 9018.

*Group, Inc.*, 2011 WL 6057993, at *4 (protecting the identities of key employees, vendors and certain confidential financial information of the parties to a purchase agreement under Section 107(b)(1)); *In re Frontier Group, LLC*, 256 B.R. 771, 773-74 (Bankr. E.D. Tenn. 2000) (importance of physician list to the debtor's business was sufficient grounds for the list to constitute confidential commercial information entitled to protection under Section 107(b)(1)).

Even potentially more important are the contents of the exemplars, or even actual copies, of the submitting law firms' retention agreements and the confidential terms therein.  *See* Rule 2019 Orders.  Such confidential contractual terms also can clearly constitute confidential commercial information.  *See, e.g., In re Nortel Networks Inc.*, No. 09-10138 KG, 2011 WL 1661524, at *1-3 (Bankr. D. Del. May 2, 2011) (sealing entire "Side Agreement" related to "Stalking Horse" asset sale agreement under Section 107(b)(1)); *In re Visteon Corp.*, 2010 U.S. Dist. LEXIS 5461, at *1-3 (Bankr. D. Del. Apr. 9, 2010) (sealing purchase agreement under Section 107(b)(1)).

The information in the Rule 2019 Exhibits would bestow an unfair advantage upon the submitting law firms' competitors and therefore should be protected under Section 107(b)(1).

## CONCLUSION

For the foregoing reasons, the ACC Appellees respectfully request that the Court affirm the Bankruptcy Court's decision, dismiss Appellant's appeal with prejudice, and grant such other and further relief as required in the interests of justice.

Dated: January 13, 2012

Respectfully submitted,

**CAMPBELL & LEVINE, LLC**

*/s/ Philip E. Milch*
Philip E. Milch
PA I.D. No. 53519
David B. Salzman
PA I.D. No. 39360
1700 Grant Building
Pittsburgh, PA  15219
Telephone:  (412) 261-0310
Facsimile:  (412) 261-5066
dbs@camlev.com
pem@camlev.com

Marla R. Eskin (DE Bar No. 2989)
Mark T. Hurford (DE Bar No. 3299)
800 N. King Street, Suite 300
Wilmington, DE 19801
Telephone:  (302) 426-1900
Facsimile:  (302) 426-9947
meskin@camlev.com
mhurford@camlev.com

- and –

**CAPLIN & DRYSDALE, CHARTERED**
Peter Van N. Lockwood
Trevor W. Swett
Kevin C. Maclay
One Thomas Circle, NW
Suite 1100
Washington, DC  20005
Telephone:  (202) 862-5000
Facsimile:  (202) 429-3301
E-mail: pvnl@capdale.com;
tws@capdale.com; kcm@capdale.com

Elihu Inselbuch
375 Park Avenue, 35th Floor
New York, NY  10152-3500
Telephone:  (212) 319-7125
Facsimile:  (212) 644-6755
E-mail: ei@capdale.com

*Counsel for the ACC Appellees*