**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **IN RE: PITTSBURGH CORNING CORPORATION,** | : | **Civil Action No. 11-1406** |
| Debtor. | : | **Bankruptcy No. 00-22876 (JKF)** |
| ------------------------------------------------ | : | |
| **GARLOCK SEALING TECHNOLOGIES, LLC,** | : | **Judge Nora Barry Fischer** |
| Appellant, | : | |
| v. | : | **ELECTRONICALLY FILED** |
| **PITTSBURGH CORNING CORPORATION,** | : | |
| Appellee. | : | |

| | | |
|---|---|---|
| **IN RE: MID-VALLEY, INC.,** | : | **Civil Action No. 11-1439** |
| Debtor. | : | **Bankruptcy No. 03-35592 (JKF)** |
| ------------------------------------------------ | : | |
| **GARLOCK SEALING TECHNOLOGIES, LLC,** | : | **Judge Nora Barry Fischer** |
| Appellant, | : | |
| v. | : | **ELECTRONICALLY FILED** |
| **MID-VALLEY, INC.,** | : | |
| Appellee. | : | |

| | | |
|---|---|---|
| **IN RE: NORTH AMERICAN REFRACTORIES COMPANY,** | : | **Civil Action No. 11-1452** |
| Debtor. | : | **Bankruptcy No. 02-20198 (JKF)** |
| ------------------------------------------------ | : | |
| **GARLOCK SEALING TECHNOLOGIES, LLC,** | : | |
| Appellant, | : | **Judge Nora Barry Fischer** |
| v. | : | **ELECTRONICALLY FILED** |
| **ARMSTRONG WORLD INDUSTRIES, et al.,** | : | |
| Appellees. | : | |

**ANSWERING BRIEF OF APPELLEES KAZAN, MCCLAIN, LYONS, GREENWOOD & HARLEY, WATERS & KRAUS LLP, SIMMONS BROWDER GIANARIS ANGELIDES & BARNERD LLC, BERGMAN, DRAPER & FROCKT, GORI, JULIAN & ASSOCIATES, P.C., EARLY, LUCARELLI, SWEENEY & STRAUSS, COONEY & CONWAY, LIPSITZ & PONTERIO, LLC, BIFFERATO LLC, AND MONTGOMERY, MCCRACKEN, WALKER & RHOADS, LLP**

MONTGOMERY, MCCRACKEN,
  WALKER & RHOADS, LLP
Natalie D. Ramsey (PA 41412)
Davis Lee Wright  (PA 90926)
123 S. Broad Street
Philadelphia, PA  19109
Telephone:  (215-772-1500)
Facsimile:  (215-772-7620)

MONTGOMERY, MCCRACKEN,
  WALKER & RHOADS, LLP
Ellen C. Brotman (PA 71775)
123 S. Broad Street
Philadelphia, PA  19109
Telephone:  (215-772-1500)
Facsimile:  (215-772-7620)

*Attorneys for Appellees*

Dated: Wilmington, Delaware
      January 13, 2012

# <u>TABLE OF CONTENTS</u>

**Page(s)**

RESTATEMENT OF JURISDICTION .................................................................. 1

RESTATEMENT OF ISSUES PRESENTED.......................................................... 1

STANDARD OF REVIEW ................................................................................... 2

        1.     General Standards Applicable To This Appeal ........................................ 2

        2.     Appellant's Attempt To Persuade This Court To Review The Decisions Of The Bankruptcy Court Under Any Other Standard Is Incorrect ................................................................................................. 3

STATEMENT OF THE CASE.............................................................................. 3

        1.     The Rule 2019 Orders............................................................................ 4

        2.     Garlock's Access Motions ...................................................................... 6

        3.     The Court's Holding .............................................................................. 8

SUMMARY OF ARGUMENT ............................................................................. 9

ARGUMENT ...................................................................................................... 10

    A.     GARLOCK'S RELITIGATION OF AN EARLIER MOTION TO ACCESS THE RULE 2019 EXHIBITS IS BARRED BY COLLATERAL ESTOPPEL AND *RES JUDICATA* .............. 10

        1.     Garlock's November 2009 Motion for Access to the 2019 Exhibits in the Pittsburgh Corning Case Mirrors Garlock's 2011 Motion for Access ................................................................................................. 10

        2.     Garlock is Collaterally Estopped from Relitigating Its Earlier Attempt to Access the 2019 Exhibits....................................................... 13

        3.     Garlock's Motion to Gain Access to the Rule 2019 Exhibits is Similarly Barred by *Res Judicata* ......................................................... 15

    B.     THE BANKRUPTCY COURT'S RULING THAT THE CLOSED CASE SHOULD NOT BE REOPENED WAS CORRECT AS WAS ITS HOLDING THAT GARLOCK WAS REQUIRED TO INTERVENE IN THE CLOSED CASE IN ORDER TO FILE ITS MOTIONS FOR ACCESS ................................................................................................. 16

    C.     GARLOCK LACKED STANDING TO REQUEST ACCESS TO THE UNFILED EXHIBITS ................................................................... 20

        1.     Garlock Does not Satisfy Article III Standing........................................ 21

            a.     Garlock Fails to Allege any Injury From the Entry of the 2019 Orders................................................................................. 21

## TABLE OF CONTENTS
### (continued)

Page(s)

        b.     Even if Garlock had Somehow Demonstrated Actual Injury, Such Injury Could not be Redressed by the Bankruptcy Court ........................................................................ 22

    2.     Garlock Does not Have Prudential Standing to Prosecute this Appeal ..................................................................................... 23

    3.     Section 107 of the Bankruptcy Code Does not Provide Garlock With Standing .......................................................................... 24

D.    EVEN IF THE BANKRUPTCY COURT'S ANALYSIS OF THE STANDING ISSUE WAS INCORRECT, THE COURT CORRECTLY DENIED GARLOCK ACCESS TO THE 2019 EXHIBITS .............................. 25

    1.     The Bankruptcy Court Properly Restricted Garlock's Access to the 2019 Exhibits Under the Third Circuit's Decision in *Pansy v. Borough of Stroudsburg* and its Progeny ................................................. 27

    2.     Application of the *Pansy* Factors Requires Denial of Garlock's Excessive Requests ................................................................. 30

    3.     Protection of the Information Contained in the 2019 Exhibits to the 2019 Statement is Warranted Under Section 107 of the Bankruptcy Code ........................................................................................ 34

JOINDER ...................................................................................................... 38

CONCLUSION ............................................................................................... 39

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Arnold v. Pa. Dept. of Transp.*,
477 F.3d 105 (3d Cir. 2007).................................................................................28

*Bank of Am. Nat'l Trust and Sav. Ass'n v. Hotel Rittenhouse Assocs.*,
800 F.2d 339 (3d Cir. 1986)...................................................................................3

*Baron & Budd, PC v. Unsecured Asbestos Claimants*,
321 B.R. 147 (Dist. Ct., D.N.J. 2005).................................................................20

*Belitskus v. Pizzingrilli*,
343 F.3d 632 (3d Cir. 2003).................................................................................20

*Bender v. Williamsport Area Sch. Dist.*,
475 U.S. 534 (1986).............................................................................................20

*Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found.*,
402 U.S. 313 (1971), *aff'd*, 465 F.2d 380 (7th Cir. 1972)...............................13

*Circuit City Stores, Inc. v. Adams*,
532 U.S. 105, 121 S.Ct. 1302, 149 L.Ed.2d 234 (2001)....................................18

*Crum & Crum Enters., Inc. v. NDC of Cal., L.P.*,
Civil No. 09-145 (RBK), 2011 WL 886356 (D. Del. Mar. 10, 2011)...................28, 33

*Donaldson v. Bernstein*,
104 F.3d 547 (3d Cir. 1997).................................................................................17

*EEOC v. US Steel Corp.*,
921 F.2d 489 (3d Cir. 1990).................................................................................15

*Enprotech Corp. v. Renda*,
983 F.2d 17 (3d Cir. 1993)....................................................................................38

*French v. Am. Gen. Fin. Servs (In re French)*,
401 B.R. 295 (Bankr. E.D. Tenn. 2009)..............................................................24

*Goldstein v. Forbes (In re Cendant)*,
260 F.3d 183 (3d Cir. 2001).................................................................25, 26, 27

*Hawkins v. Landmark Finance Co.*,
727 F.2d 324 (4th Cir. 1984)...............................................................................17

*Henglein v. Colt Indus. Operating Corp.*,
260 F.3d 201 (3d Cir. 2001)...............................................................................14

*In re 50-Off Stores, Inc.*,
213 B.R. 646 (Bankr. W.D. Tex. 1997) ........................................................27, 37

*In re Antonious*,
373 B.R. 400 (Bankr. E.D. PA 2007) ..................................................................16

*In re Arboleda*,
224 B.R. 640 (Bankr. N.D. Ill. 1998) ..................................................................19

*In re Brown*,
951 F.2d 564 (3d Cir. 1991)..................................................................................14

*In re Cloninger*,
209 B.R. 125 (Bankr. E.D. Ark. 1997) .................................................................17

*In re Combustion Engineering*,
391 F.3d 190 (3d Cir. 2004).................................................................................20

*In re Exide Techs.*,
607 F.3d 957 (3d Cir. 2010)...................................................................................2

*In re Garlock Sealing Technologies, LLC*,
Case No. 10-31607...................................................................................................8

*In re Garlock Sealing Technologies, LLC*
Case No. 10-31607 Dkt. 1347...............................................................................23

*In re Gitto Global Corp.*,
422 F.3d 1 (1st Cir. 2005).....................................................................................35

*In re Handy Andy Home Improvement*,
199 B.R. 376 (Bankr. N.D. Ill. 1996)...................................................................36

*In re Kaiser Aluminum Corp.*,
327 B.R. 554 (D. Del. 2005), *affirmed on appeal In re Pittsburgh Corning Corp.*, 260
Fed. Appx. 463, 2008 WL 101747 (3d Cir. 2008)..................................6, 24, 35, 36, 37, 38

*In re Mellon Bank, N.A. v. Metro Communications, Inc.*,
945 F.2d 635 (3d Cir. 1991)....................................................................................3

*In re Nelson*,
100 B.R. 905 (Bankr. N.D. Ohio 1989) ................................................................17

*In re Nortel Networks, Inc.*,
2011 WL 6826412 (3d Cir. Dec. 29, 2011) ............................................................2

*In re North Bay General Hospital*,
404 B.R. 429 (Bankr. S.D. Tex. 2009) ...............................................................................18, 19

*In re Orion Pictures*,
21 F.3d ...........................................................................................................................................36

*In re Pittsburgh Corning Corp.*,
2005 WL 6128987 (W.D. Pa. 2005) .................................................................................24, 25

*In re Pittsburgh Corning Corp.*,
No. 00-22876 (Bankr. W.D. Pa. Aug. 26, 2004) ...............2, 4, 7, 10, 11, 12, 13, 14, 16, 23, 24, 25

*In re Pittsburgh Corning Corp.*,
No. 00-22876 (Bankr. W.D. Pa. Aug. 27, 2004) ...........................................................................4

*In re Pittsburgh Corning Corp.*,
No. 00-22876 (Bankr. W.D. Pa. June 17, 2005)............................................................................4

*In re Pittsburgh Corning Corp.*,
No. 00-22876 (Bankr. W.D. Pa. Nov. 19, 2009) ..........................................................................7

*In re Pittsburgh Corning Corp.*,
No. 00-22876 (Bankr. W.D. Pa. Nov. 23, 2009) ..............................................................7, 11, 12, 14

*In re Pittsburgh Corning Corp.*,
No. 00-22876 (Bankr. W.D. Pa. Oct. 22, 2004) ...........................................................................4

*In re Risby*,
2008 WL 116701 (Bankr. E.D. Ark. Jan. 7, 2008)....................................................................34

*In re Roman Catholic Archbishop of Portland in Oregon*,
__ F.3d __, 2011 WL 4375678 (9th Cir. 2011) ........................................................................35

*In re Semcrude*,
428 B.R. 590 (D. De. 2010) ..........................................................................................................2

*In re Zinchiak*,
406 F.3d 214 (3d Cir. 2005)........................................................................................................17

*Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc.*,
458 F.3d 244 (3d Cir. 2006)........................................................................................................13

*Judd v. Wolfe*,
78 F.3d 110 (3d Cir. 1996)...........................................................................................................17

*Lans v. Adduci Mastriani & Schaumberg L.L.P.*,
786 F. Supp. 2d 240 (D.D.C. 2011) ...........................................................................................15

*Leap Sys., Inc. v. Moneytrax, Inc.*,
638 F.3d 216 (3d Cir. 2011)........................................................................................27, 28, 38

*Leucadia, Inc. v. Applied Extrusion Techs., Inc.*,
998 F.2d 157 (3d Cir. 1993)........................................................................................................32

*LG Display Co., Ltd. v. AU Optronics Corp.*,
Civil Action No. 06-726-LPS, 2010 WL 5463305 (D. De. Dec. 29, 2010) ................................29

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992)....................................................................................................................21

*Lynne Carol Fashions, Inc. v. Cranston Print Works Co.*,
453 F.2d 1177 (3d Cir. 1972).....................................................................................................13

*Matter of Becker's Motor Transportation, Inc.*,
632 F.2d 242 (3d Cir. 1980).......................................................................................................17

*Matter of Case*,
937 F.2d 1014 (5th Cir. 1991) ....................................................................................................17

*Matter of Firstmark Corp.*,
132 F.3d 1179 (7th Cir. 1997) ....................................................................................................20

*Nat'l Org. for Women, Inc. v. Scheidler*,
510 U.S. 249 (1994)....................................................................................................................20

*Nixon v. Warner Commc'ns*,
435 U.S. 589 (1978).....................................................................................................................27

*Official Committee of Unsecured Creditors of Cybergenics Corp. ex rel. Cybergenics
Corp. v. Chinery*,
330 F.3d 548 (3d Cir. 2003)........................................................................................................18

*Pa. Prison Soc'y v. Cortes*,
622 F.3d 215 (3d Cir. 2010)........................................................................................................21

*Pansy v. Borough of Stroudsburg*,
23 F.3d 772 (3d Cir. 1994)...........................................3, 21, 25, 26, 27, 28, 29, 30, 32, 33, 34, 38

*Parklane Hosiery Co. v. Shore*,
439 U.S. 322 (1979).....................................................................................................................13

*Peloro v. United States*,
488 F.3d 163 (3d Cir. 2007)....................................................................................................13, 14

*Pichler v. UNITE*,
585 F.3d 741 (3d Cir. 2009)....................................................................................................22, 23

*Universal Minerals, Inc. v. C.A. Hughes & Co.*,
669 F.2d 98 (3d Cir. 1981)..................................................................................3

*Urbanco, Inc. v. Urban Systems Streetscape, Inc.*,
111 B.R. 134 (W.D. Mich. 1990) ......................................................................17

*Wallace v. United Parcel Service*,
387 F. App'x 127 (3d Cir. 2010) ......................................................................16

*Warth v. Seldin*,
422 U.S. 490 (1975)..........................................................................................20

## STATUTES

11 U.S.C. §107.............................................................9, 10, 24, 25, 26, 34, 35, 37, 38

11 U.S.C. §107(b)...............................................................................34, 36, 38

11 U.S.C. §107(c)..............................................................................24, 34, 35

11 U.S.C. §107(c)(1).................................................................................34

11 U.S.C. §350(b) .............................................................................17, 18, 19

28 U.S.C. §158(a) ........................................................................................2

28 U.S.C. §158(a)(1).....................................................................................1

28 U.S.C. § 1334.........................................................................................1

Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. 109-8,
§1501(a), 119 Stat. 23, 216 (2005) ..................................................................35

## OTHER AUTHORITIES

Rule 2019 of the Federal Rules of
Bankruptcy Procedure..............................1, 4, 5, 7, 8, 10, 15, 16, 26, 30, 31, 33, 34, 35, 36, 37, 38

2A *N.* Singer, *Sutherland on Statutes and Statutory Construction* §47.17 (1991) ......................18

Arthur R. Miller, *Confidentiality, Protective Orders, and Public Access to the Courts*,
105 Harv. L. Rev. 427, 492 (1991) ..................................................................34

Rule 9018 of the Federal Rules of
Bankruptcy Procedure.................................................................................35

Rule 26 of the Federal Rules of
Civil Procedure .......................................................................................35

Kazan, McClain, Lyons, Greenwood & Harley, Waters & Kraus LLP, Simmons Browder Gianaris Angelides & Barnerd LLC, Bergman, Draper & Frockt, Gori Julian & Associates, P.C., Early, Lucarelli, Sweeney & Strauss, Cooney & Conway, Lipsitz & Ponterio, LLC, Bifferato LLC, and Montgomery, McCracken, Walker & Rhoads, LLP, each an appellee with respect to the above-captioned procedurally consolidated bankruptcy appeals, on their own behalf and on behalf of their respective predecessors ("Certain Law Firm Appellees"), respond as follows to the brief filed by Garlock Sealing Technologies, LLC ("Appellant" or "Garlock") on December 12, 2011, and respectfully state as follows:

<u>**RESTATEMENT OF JURISDICTION**</u>

This Court has jurisdiction to hear these appeals pursuant to 28 U.S.C. §§158(a)(1) and 1334. The orders appealed from are final orders that were issued by the Honorable Judith K. Fitzgerald, sitting by designation in the United States Bankruptcy Court for the District of Delaware, in each of the above-captioned cases (the "Asbestos Bankruptcy Cases").

<u>**RESTATEMENT OF ISSUES PRESENTED**</u>

The Certain Law Firm Appellees state that the following issues are presented to this Court as a result of the instant appeal:

1.      Whether the Bankruptcy Court properly concluded that Garlock had to first seek to reopen the bankruptcy case which had been closed before the filing of its Access Motion (the "Closed Case"), and then seek to intervene in the Closed Case, before it could access the exhibits to Rule 2019 Statements (the "2019 Exhibits") filed pursuant to various Bankruptcy Rule 2019 Orders (the "Rule 2019 Orders") entered by the Bankruptcy Court.

2.      Whether in the exercise of its broad discretion the Bankruptcy Court properly ruled not to reopen the Closed Case when Garlock failed to provide a valid cause to reopen and the reopening of the cases would have imposed an undue burden on the reorganized Debtors.

3.     Whether, the Bankruptcy Court properly concluded that Garlock failed to satisfy both Article III standing and prudential standing when it sought access to 2019 Exhibits which included the private information of thousands of individuals that had never been publicly filed and were not part of the judicial record.

4.     If this Court finds the 2019 Exhibits were judicial records, did the Bankruptcy Court properly conclude that Garlock did not have the right to access the private, confidential and purposely protected information of individuals who Garlock could not prove ever participated in Garlock's own bankruptcy, or in the 12 cases here, as parties, claimants or creditors.

5.     Whether Garlock's current efforts to gain access to 2019 Exhibit are barred by principles of collateral estoppel and *res judicata* and was denied this relief in 2009 in the *Pittsburgh Corning* bankruptcy.

## STANDARD OF REVIEW

### 1.     General Standards Applicable To This Appeal

This Court exercises jurisdiction over an appeal from the Bankruptcy Court pursuant to 28 U.S.C. §158(a).  This Court will not disturb the Bankruptcy Court's findings of fact unless it is determined that those findings were "clearly erroneous".  *In re Nortel Networks, Inc.*, 2011 WL 6826412, *7 (3d Cir. Dec. 29, 2011) (citing *In re Exide Techs.*, 607 F.3d 957, 961-62 (3d Cir. 2010)).  Conclusions of law are subject to plenary review.  *Id.*  To the extent this Court is presented with mixed questions of law and fact, the Court is obligated to accept the Bankruptcy Court's findings  of  "historical or narrative facts unless clearly erroneous, but [will] exercise[] plenary review of the trial court's choice and interpretation of legal precepts and its application of those precepts to the historical facts." *In re Semcrude*, 428 B.R. 590, 593 (D. De. 2010)

(citing *In re Mellon Bank, N.A. v. Metro Communications, Inc.*, 945 F.2d 635, 642 (3d Cir. 1991)

(citing *Universal Minerals, Inc. v. C.A. Hughes & Co.*, 669 F.2d 98, 101,102 (3d Cir. 1981)).

**2.    Appellant's Attempt To Persuade This Court To Review The Decisions Of The Bankruptcy Court Under Any Other Standard Is Incorrect**

The Bankruptcy Court properly denied Appellant access to the 2019 Exhibits.  Appellant confuses the issues before this Court by proposing application of a standard used by courts of appeal reviewing decisions denying requests to view judicial records.  *See Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 781 (3d Cir. 1994) (reversed and remanded, in part).[1]  In *Pansy*, the Third Circuit stated that:  "the balancing of factors for and against access [to judicial proceedings and judicial records] is a decision committed to the discretion of the district court, although it is not generally accorded the narrow review reserved for discretionary decisions based on first-hand observations.  *Id*. (citing *Bank of Am. Nat'l Trust and Sav. Ass'n v. Hotel Rittenhouse Assocs.*, 800 F.2d 339, 344 (3d Cir. 1986).  Because the documents sought by the Appellant are not "judicial proceedings" or "judicial records," the standard proposed in *Pansy* does not apply.

## STATEMENT OF THE CASE

Appellant Garlock Sealing Technologies, Inc. ("Garlock") appeals from an Order dated October 7, 2011 (the "Order Denying Access") entered by Bankruptcy Court Judge Judith K. Fitzgerald in three asbestos-related bankruptcy cases pending in the Bankruptcy Court for the Western District of Pennsylvania (the "Bankruptcy Court")[2] denying  a series of related motions

---

[1] Appellant's reliance on *Pansy* is improper.  *Pansy* arose when journalists sought access to certain documents on behalf of the public at large.  Appellant seeks use of the 2019 Exhibits solely to engage in a fishing expedition and attack its claimants with the goal of reducing its obligation to fund a trust to be formed for the benefit of persons injured by Appellants' products.

[2] Identical orders were entered in nine asbestos-related bankruptcy cases pending before the United States Bankruptcy Court for the District of Delaware.

to re-open one case (the "Closed Case"), intervene in the remaining cases and ultimately gain access to the confidential exhibits filed pursuant to certain orders entered by the Bankruptcy Court[3] (the "Rule 2019 Orders") in all three cases.

### 1.    The Rule 2019 Orders

Until January of 2011, Rule 2019 of the Federal Rules of Bankruptcy Procedure (collectively, the "Bankruptcy Rules") required every entity other than a committee appointed by the bankruptcy court to file a verified statement setting forth "(1) the name and address of the creditor …; (2) the nature and amount of the claim or interest and the time of acquisition thereof unless it is alleged to have been acquired more than one year prior to the filing of the petition; (3) a recital of the pertinent facts and circumstances in connection with the employment of the entity …, and (4) with reference to the time of the employment of the entity, … the amounts of claims or interests owned by the entity, … the times when acquired, the amounts paid therefor, and any sales or other disposition thereof…." Fed. R. Bankr. P. 2019. The Rule is self-executing and does not require further order of the court.

While Rule 2019 requires reporting of all representations[4], in the unique context of an asbestos bankruptcy case not all potential claimants will be "creditors" with valid claims in the

---

[3] *See, e.g.*, Order Requiring Filing of Statements Pursuant to Fed. R. Bankr. P. 2019, *In re Pittsburgh Corning Corp.*, No. 00-22876 (Bankr. W.D. Pa. Aug. 26, 2004) [Dkt. No. 3527]; Amendatory Order Requiring Filing of Statement Pursuant to Fed. R. Bankr. P. 2019, *In re Pittsburgh Corning Corp.*, No. 00-22876 (Bankr. W.D. Pa. Aug. 27, 2004) [Dkt. No. 3530]; Revised Order Requiring Filing of Statements Pursuant to Fed. R. Bankr. P. 2019, *In re Pittsburgh Corning Corp.*, No. 00-22876 (Bankr. W.D. Pa. Oct. 22, 2004) [Dkt. No. 3667]; Supplement to Revised Order Requiring Filing of Statements Pursuant to Fed. R. Bankr. P. 2019, *In re Pittsburgh Corning Corp.*, No. 00-22876 (Bankr. W.D. Pa. June 17, 2005) [Dkt. No. 4347] Similar orders were entered in all twelve cases, with the possible exception of *Mid-Valley.*

[4] Under revised Rule 2019, effective December 1, 2011, it has also become clear that lawyers for asbestos claimants are not required to file Rule 2019 Statements merely because of their passive appearance in the case. *See, e.g.*, Rule 2019 ("'represents' means to take a position before the court") & advisory committee's notes ("The advisory committee also added a definition of 'represent' or 'represents' in subdivision (a)(2) that limits the application of the rule to groups, committees, and entities taking a position before the court or soliciting votes on a plan.")

bankruptcy.  Mem. Op. at 12.  Asbestos-related bankruptcy is different from other bankruptcies

and even other mass torts.  A victim of asbestos exposure may be a victim of exposure to

multiple products.  Until discovery is complete, while a victim may have a good faith belief that

a particular asbestos manufacturer/distributor may have caused or contributed to their asbestos

injury, there may not yet be sufficient proof to pursue compensation from that entity.[5]  Once a

bankruptcy case is filed, a victim's ability to conduct that discovery is halted.  There are many

asbestos victims (or the estates of those victims) who retain counsel to represent them in

evaluating, preserving and, if appropriate, pursuing claims against those responsible for their

injury.  Further, because of the latent nature of the disease, exposed individuals may seek legal

representation even prior to the appearance of symptoms.  These individuals may never develop

an injury.  Thus, asbestos victims are different from creditors in most bankruptcy cases.  Many

do not know whether they are creditors, and take no action in the bankruptcy case until a bar date

is established and they must make the decision whether to file a claim or until a plan is proposed

and they elect to vote or not vote on that plan.

Accordingly, the Rule 2019 Orders at issue are *sui generis*, designed to address the

unique considerations that attend asbestos bankruptcies.  As the Bankruptcy Court explained in

its Memorandum Opinion ("Mem. Op.") accompanying the Order Denying Access, the 2019

Orders were carefully crafted to create a unique, and now time-tested, procedure that balanced

the purposes and requirements of Rule 2019 with the privacy issues that arise in the context of

asbestos related litigation.  Mem. Op. at 11-14.  Importantly, while the "Statements" by the law

firm of multiple representations required by Rule 2019 were filed on the public record, the

---

[5] For example, Garlock may be named in a lawsuit by an individual who has a good faith belief that they may have been exposed to Garlock gaskets working, for example, as a pipefitter.  After discovery is completed, that individual may ultimately learn that they were or were not exposed to Garlock gaskets.  In the tort system, a percentage of the filed claims against any given defendant will ultimately be dismissed or withdrawn.

exhibits, which contain not only the names of the individuals/estates represented by a law firm, but generally also information regarding the nature of their asbestos injury, their date of diagnosis, the terms of their engagement of counsel, and other private information, were not filed but instead were submitted in the form of CDs and held separately by the Clerk of the Bankruptcy Court. 2019 Orders. SROA Tab 1. Access to the private information was to be made by motion and given only upon court order. Mem. Op. at 15. The Bankruptcy Court created a process that provided for *necessary* access, while properly protecting the information that was not suitable for public dissemination.[6] This process was approved through two levels of appellate review. *See In re Kaiser Aluminum Corp.*, 327 B.R. 554, 560 (D. Del. 2005) (Judge Fitzgerald's Rule 2019 Orders properly balances the public's right to access information with privacy interests.), *affirmed on appeal In re Pittsburgh Corning Corp.*, 260 Fed. Appx. 463, 465, 2008 WL 101747, (3d Cir. 2008) ("Because we find no error in the District Court's resolution of Appellants' access challenge, we will discuss it no further here.")

### 2.     Garlock's Access Motions

After six of the above cases were closed, and the other three were substantially concluded, in January 2011 Garlock filed its motions seeking full access to all of the 2019 Exhibits submitted to the Clerk in each of the nine cases. Specifically, "Garlock demands production of hundreds, if not thousands, of 2019s filed by every lawyer in each of these cases, even though it has never entered an appearance or participated in those cases." Mem. Op. at 14.

---

[6] In addition to sitting on the United States Bankruptcy Court for the Western District of Pennsylvania, for years Judge Fitzgerald has been designated to preside over bankruptcy cases pending in the District of Delaware. Judge Fitzgerald has overseen at least thirteen active (or recently active), major mass tort bankruptcies. In Pittsburgh, Judge Fitzgerald presides over *Mid-Valley, Inc.* (03-35592), *Global Indus. Techs.* (02-21626), and *North Am. Refractories Co.* (02-20198) - all substantial mass tort-related chapter 11 cases. Judge Fitzgerald's Delaware bankruptcy docket includes eight major mass tort insolvencies: *The Flintkote Co.* (04-11300), *Combustion Eng'g, Inc.* (03-10495), *ACandS, Inc.* (02-12687), *Kaiser Aluminum Corp.* (02-10429), *U.S. Mineral Prods. Co.* (01-2471), *USG Corp.* (01-2094), *W.R. Grace & Co.* (01-1139), *Owens Corning* (00-3837), and *Armstrong World Indus.* (00-4471).

The proffered reason for seeking access was that those Exhibits somehow provided evidence of widespread misconduct in the tort system having previously filed an unsuccessful motion for access to the Rule 2019 Exhibits in the *Pittsburgh Corning* bankruptcy,[7] Garlock now attempted to cloak its request in a constitutional right to access.

Offering not a shred of actual evidence of misconduct, Appellant's access motions again impugned the credibility of literally hundreds of thousands of individuals injured by asbestos and the law firms that represent them.  Despite its reliance on a right to access, Garlock again was candid that its effort to gain access to 2019 Exhibits was for the purpose of a widespread fishing expedition in search of proof of "concealment and manipulation" in the tort system.[8]  Garlock contends that the 2019 Exhibits "will show that many of the person with whom Garlock settled had evidence that all or some of the Delaware Defendants contributed to such plaintiffs' injuries but did not disclose this highly material evidence in response to lawful discovery."  *Id. at* 13.

However, Garlock's attempted characterization of the information disclosed on the Rule 2019 Exhibits is simply wrong.  As Judge Fitzgerald explained:

> And that was made clear when the law firms agreed to file the 2019 statements.  In some instances they represent potentially future claimants, people who know they've been exposed but have no injury, demand holders and yet those people may never have a demand because their injury may never manifest and so, the statements don't necessarily show that there is a, quote," present creditor" involved.  That's the difficulty with 2019 in a mass tort context.  So they don't always show that there is a creditor.  What shows that there is a creditor in a case is the ballot that was voted."  (SROA Tab 14 p.74:18 to 75:3)[9]

---

[7] *See* Motion of Garlock Sealing Technologies, LLC for Order Authorizing Access to Certain 2019 Statements Filed in Case, *In re Pittsburgh Corning Corp.*, No. 00-22876 (Bankr. W.D. Pa. Nov. 19, 2009) [Dkt. No. 7159]

[8] PCC Motion, ¶24 (emphasis supplied).  ROA Tab 15 of Appellant's Designation.

[9] The Bankruptcy Court had previously described the "meaning" of the 2019 Statements in Garlock's first effort to obtain access to the confidential Rule 2019 Exhibits in *Pittsburgh Corning*.  Mem. Op. at 13-14.  More than a year

Continued…

This same analysis applies to Garlock's other proffered reason for needing the protected information: that it will be helpful in its estimation of its own aggregate asbestos liability in its own bankruptcy case. *Id. at* 12. Garlock wishes to advance a theory that its settlement history is unreliable because its settlement decisions were based on inaccurate information. Such a proposed use is speculative at best, and has never been accepted as a proper methodology in any prior asbestos bankruptcy case.[10] It was precisely the speculative nature of Garlock's claimed interest that reflected that it could not establish any injury, let alone a concrete or particularized harm or injury that was imminent.

### 3. The Court's Holding

Making factual findings that (1) Garlock lacked standing to intervene; (2) the negative consequences of reopening the Closed Case "would be enormous" (Mem. Op. at 9); (3) the Rule 2019 Exhibits are not statements of creditor status in the case; (4) the Rule 2019 Exhibits do not constitute a representation by a listed individual/estate; and (5) that Garlock could access balloting records in these cases which were public and would identify those individuals/estates who had acted in a manner that indicated an intention to pursue compensation from the respective debtor, the Court properly denied Garlock's motions.

----

….Continued

prior to the hearing in this case, the court described the 2019 Statements as "a statement by a lawyer and it says these are the people I represent in this case. That's it. It's doesn't give you any information about what evidence the clients have in support of their claims and it doesn't tell you whether the lawyer actually is ultimately even going to file a claim in the case …." Mem. Op. at 13, quoting, *In re Pittsburgh Corning Corporation,* Bankr. No. 00–22876, Doc. No. 7422, Tr. 1/13/2010, at 38.

[10] The judge presiding Garlock's own bankruptcy in the United States Bankruptcy Court for the Western District of North Carolina has refused to place the schedule for estimation on hold pending the outcome of this appeal. Judge Hodges' refusal to delay the estimation proceedings underscores his lack of any faith in the merit of Garlock's frolic and detour through the cases of a dozen other cases. *In re Garlock Sealing Technologies, LLC,* Case No. 10-31607 (Bank. W.D.N.C.)

## SUMMARY OF ARGUMENT

This appeal stems from Garlock's repeated and wrong insistence that the 2019 Exhibits at issue here include the names and other private information of *creditors* in bankruptcy, not potential claimants. Garlock's insistence on this view of the 2019 Exhibits has continued beyond reason and logic, and is especially incomprehensible in the face of the lower court's repeated explanations that the 2019 Exhibits contain only information related to representation of potential claimants, and not the merits of creditors' claims.

In fact, Garlock has raised and lost on its underlying rationale before, and is estopped from raising these issues again here. However, if the Court finds that the principles of collateral estoppel and *res judicata* do not bar relitigation of these issues, Garlock still cannot prevail and the Bankruptcy Court's order must be affirmed.

First, the Bankruptcy Court was well within its discretion in refusing to open Closed Case for the purpose of filing the Access Motions. While the Bankruptcy Code permits the cases to be reopened for cause, the lower court was correct in finding that the cases should not be reopened to permit Garlock to access documents that have no current evidentiary significance and were never intended for public dissemination. Garlock's purported reasons for reaching the documents were unpersuasive as they were all premised on Garlock's stubborn adherence to its position that the 2019 Exhibits contained the names of creditors, rather than potential claimants.

As to the open bankruptcy cases, Garlock had no standing to move to intervene in those cases since its inability to reach the 2019 Exhibits could not injure it, as the Exhibits could not be used for the purposes for which Garlock claimed it sought to use them. Further, the lower court correctly found that provision of the 2019 Exhibits could not cure any of the speculative injuries Garlock alleged it was suffering. As to standing under Section 107, this was not discussed by the Bankruptcy Court – presumably because the 2019 Exhibits were not judicial records to which

Section 107 would apply – but Garlock cannot claim standing on that basis either.  Section 107 does not provide Garlock with standing to pursue a private right of action.

If the Court finds that Garlock does have standing to seek access to the 2019 Exhibits, it still cannot prevail.  The right of access is not absolute.  The decision as to whether a judge's decision to protect private information is correct is subject to an analysis of several factors including the interest in privacy of the party seeking protection and whether the information is being sought for a legitimate purpose.  In this case, it is clear that Garlock is seeking this information for an improper purpose.  Ostensibly, Garlock filed the motions at issue here to assist it in its continually unsuccessful search for proof of "concealment or manipulation" in the tort system.  Appellant's Br. at 13.  Garlock also contends that the 2019 Exhibits "will show that many of the person with whom Garlock settled had evidence that all or some of the Delaware Defendants contributed to such plaintiffs' injuries but did not disclose this highly material evidence in response to lawful discovery."  *Id.*  However, the exhibits to the 2019 statements have no evidentiary value for Garlock in its apparently never ending, but fruitless, quest to prove fraud in the tort system.

For all these reasons, the Court should dismiss the appeals, or affirm the Order Denying Access.

## ARGUMENT

### A.    GARLOCK'S RELITIGATION OF AN EARLIER MOTION TO ACCESS THE RULE 2019 EXHIBITS IS BARRED BY COLLATERAL ESTOPPEL AND *RES JUDICATA*

#### 1.    Garlock's November 2009 Motion for Access to the 2019 Exhibits in the *Pittsburgh Corning* Case Mirrors Garlock's 2011 Motion for Access

The central issue raised by Garlock in this appeal and its underlying motions for access to the Rule 2019 Exhibits have already been litigated, and are now barred by principles of collateral

estoppel and *res judicata*.  In November 2009, Garlock filed a motion seeking relief identical to that sought below in the *In re Pittsburgh Corning* case, one of the twelve asbestos cases here in issue.  *See In re Pittsburgh Corning Corp.*, No. 00-22876 (Bankr. W.D. Pa. Nov. 23, 2009) [Dkt. No. 7159] (the "PCC Motion"); SROA Tab 70.  In that Motion, Garlock sought the 2019 Exhibits on the same bases that it asserts here:  that the 2019 Exhibits would reveal the identity of "all personal injury claimants" who had been injured by asbestos or asbestos-containing products produced by Pittsburgh Corning, *Id.* at ¶8; that the 2019 Exhibits would show that Pittsburgh Corning claimants had sued or are currently suing Garlock, "giving Garlock contribution claims and demands against PCC," *Id.* at ¶13; and that the Exhibits will demonstrate that plaintiffs are making inconsistent statements in bankruptcies and in the tort system about their exposure to various asbestos products.  *Id.* at ¶14.  Although the motion was filed only in the *Pittsburgh Corning* case, Garlock sought access to the 2019 Exhibits in all of the twelve cases during oral argument.  *See* SROA Tab 199 at 34:17-37:22.

Judge Fitzgerald denied the First Access Motion at a hearing on January 13, 2010. SROA Tab 199.  First, the Bankruptcy Court specifically found that Garlock was not entitled to access the 2019 Statements because they do not identify actual creditors who claim they have been injured by asbestos:

> … the purpose for filing the 2019 statements is essentially to make sure that the Court understands … that the attorneys who purport to represent particular parties actually do represent those parties and therefore have the right to participate in the significant events in the case….  It is the ballots that determine whether or not a person has come forward with information that indicates that they have a claim against this estate at this time.).

SROA Tab 199 at 40:9-41:2.

Second, the court specifically found that the 2019 Exhibits would not provide proof that Garlock had been or was being sued by a creditor of Pittsburgh Corning as a means to justify

giving Garlock standing in Pittsburgh Corning's bankruptcy.  In response to this issue, the court

clearly laid out the circumstances under which a specific 2019 Exhibit would be relevant:

> [T]he fact that somebody has listed an individual as a client on a
> 2019 statement is not evidence that they are going to submit a
> claim against the trust in the future.  So I don't even see how it's
> relevant at this point.  It may be relevant … when a piece of
> litigation takes place in the state tort system against Garlock and at
> that point Garlock thinks somehow that because it's a codefendant
> with PCC that it may have some access or need to access a specific
> 2019 statement as to a particular client.  But giving you mass
> discovery as to everybody who every law firm represents I think
> has no basis in law or in fact.  It is not – those statements are not
> for that purpose and I don't see a basis to grant this relief."

SROA Tab 199 at 44:12-16.

Third, Judge Fitzgerald rejected Garlock's argument that the 2019 Exhibits show prior

inconsistencies that lead to non-frivolous allegations of fraud or misrepresentations to the court.

Again, the court explained that it was the ballots, and not the 2019 Exhibits, that could include

the relevant information Garlock sought:

> So the ballots are there and you've got them.  If they've taken an
> inconsistent position in the tort system, go complain to the state
> court judge about the fact that they've taken an inconsistent
> position.  That has nothing to do with the legitimacy of their vote
> in this case.  They're taking a position here that says they have a
> legitimate claim, they've sworn to that fact under penalty of
> perjury, and the ballot is what determines that.  To the extent that
> Garlock is a codefendant as to any of those folks who have voted,
> then you're a codefendant.  That proves the point that you're trying
> to make.  You don't need the 2019 statements to bolster that
> argument, you've got them in the form of the ballots."

SROA Tab 199 at 43:5-17.

Thus, the issues raised by Garlock in the Access Motions mirror those raised in the

*Pittsburgh Corning*.  Just as the Bankruptcy Court did here, it denied the PCC Motion but left the

door open to Garlock to provide the court with "a request for access to information contained in

a *specific* 2019 Statement as to a *particular client in specific instances or need or cause*."
(SROA Tab 218 at 3; compare Mem. Op. at 14).[11]

 This Court should dismiss Garlock's appeal because the doctrines of both collateral estoppel and *res judicata* bar a relitigation of these issues.

### 2. Garlock is Collaterally Estopped from Relitigating Its Earlier Attempt to Access the 2019 Exhibits

 The doctrine of collateral estoppel precludes a party from relitigating an issue that previously has been decided, serving the "dual purpose of protecting litigants from the burden of relitigating an identical issue … and of promoting judicial economy by preventing needless litigation." *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 (1979).[12]  Garlock's current renewed attempt to access the 2019 Exhibits constitutes a classic example of needless and wasteful litigation.

 Collateral estoppel requires that "(1) the identical issue was previously adjudicated; (2) the issue was actually litigated; (3) the previous determination was necessary to the decision; and (4) the party being precluded from relitigating the issue was fully represented in the prior action."  *Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc.*, 458 F.3d 244, 249 (3d Cir. 2006) (citation omitted).  All of these elements are present in this case.  First, the identical issue was previously adjudicated.  As detailed in the prior section, both the ultimate relief, *i.e.* access to the

---

[11] The lower court recognized that the argument here was a repeat of the earlier argument and again rejected it: "Garlock has, in essence repeated what it sought in *Pittsburgh Corning* against all of the debtors captioned herein, yet failed to identify even one of its creditors for which it seeks information."  Mem. Op. at 14.

[12] Non-mutual collateral estoppel is appropriate here, as it is being applied offensively against the party interposing the identical argument in the later case.  *Peloro v. United States*, 488 F.3d 163, 175 (3d Cir. 2007) (citing *Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 324 (1971), *aff'd*, 465 F.2d 380 (7th Cir. 1972) ("Under the modern doctrine of non-mutual issue preclusion … a litigant may also be estopped from advancing a position that he or she has presented and lost in a prior proceeding against a different adversary.").  Additionally, the Third Circuit has "adopted a rather expanded view regarding the application of collateral estoppel, and has, in many situations, dispensed with the requirement of mutuality."  *Lynne Carol Fashions, Inc. v. Cranston Print Works Co.*, 453 F.2d 1177, 1181 (3d Cir. 1972) (citation omitted).

2019 Exhibits, and the specific the issues raised by Garlock's PCC Motion were the basis for relief in Garlock's Access Motion.  Second, the issue was fully litigated.  Garlock's arguments raised in support of its PCC Motion were heard by the court both on the papers and at oral argument.  Garlock's arguments for its Access Motion did not vary between 2009 and 2011.  Third, the previous determination that Garlock would not be given access to the 2019 Exhibits was the sole issue presented and decided.  Fourth, Garlock was fully represented in the 2009 proceeding in *Pittsburgh Corning*; in fact, the same attorney argued both matters.  *See* SROA Tab 199 at 34-66, and SROA Tab 11.

*Peloro v. United States*, 488 F.3d 163, 174-75 (3d Cir. 2007) articulates another factor that the issue be determined by a final and valid judgment.  Here, the Bankruptcy Court in *Pittsburgh Corning* issued an order rejecting Garlock's PCC Access Motion.  Decision Resolving PCC Access Motion at 3.  A judgment need not be "final in the sense of being appealable" for collateral estoppel purposes.  *In re Brown*, 951 F.2d 564, 569 (3d Cir. 1991).  Rather, "the doctrine of collateral estoppel applies whenever an action is 'sufficiently firm to be accorded conclusive effect.'"  *Id.*  In *Brown*, the court advised that "[i]n determining whether the resolution was sufficiently firm, the second court should consider whether the parties were fully heard, whether a reasoned opinion was filed, and whether that decision could have been, or actually was, appealed."  *Id.; see also Henglein v. Colt Indus. Operating Corp.*, 260 F.3d 201, 210 (3d Cir. 2001) (citation omitted) (stating that finality in the context of issue preclusion "is a more 'pliant' concept than it would be in other contexts").  With respect to the PCC Access Motion and oral argument, Garlock's counsel himself agreed with the Bankruptcy Court and counsel for the adverse parties that, rather than continuing the motion until Garlock could obtain the necessary information, an order should be entered resolving the that motion.  *See* SROA Tab

199 at 66:17-24 ("Mr. Cassada:  Your Honor, I tend to agree.  If you're going to deny the motion, deny it and we'll proceed from there.  The Court:  Okay.  I will take an order that denies this motion without prejudice to being raised regarding specific instances of need or cause for the reasons I've stated on this record.").  Garlock was well aware that it could "proceed from there" on the decision of the Judge to deny the blanket access to the 2019 Exhibits that Garlock had sought, but chose not to do so.  That order, by Garlock's own admission, was finally decided.

This Court should reject Garlock's current attempts to undo the Bankruptcy Court's earlier decision denying Garlock broad access to the 2019 Exhibits.  Garlock's attempt to relitigate this issue in its minimally altered form against the same and similarly situated parties.  Thus, Appellees respectfully request that Garlock's appeal be dismissed as it is estopped from raising the issues here that have already been litigated.

### 3.  Garlock's Motion to Gain Access to the Rule 2019 Exhibits is Similarly Barred by *Res Judicata*

Just as Garlock's request for the Rule 2019 Exhibits is blocked by collateral estoppel, it is also barred by *res judicata*.  The doctrine of *res judicata*, or claim preclusion, bars relitigation of a claim that has already been determined on the merits by a court of competent jurisdiction.  It "requires a showing that there has been (1) a final judgment on the merits in a prior suit involving (2) the same claim and (3) the same parties or their privies."  *EEOC v. US Steel Corp.*, 921 F.2d 489, 493 (3d Cir. 1990).  A "defendant not named in a prior suit may establish an 'identity of parties' and thus invoke *res judicata* by demonstrating that it is in privity with a party named in the prior suit."  *Lans v. Adduci Mastriani & Schaumberg L.L.P.*, 786 F. Supp. 2d 240, 307 (D.D.C. 2011).

As with collateral estoppel, the Third Circuit takes a "broad view of what constitutes identity of causes of action [for the purposes of *res judicata*] – an essential similarity of the

underlying events giving rise to the various legal claims." *Wallace v. United Parcel Service*, 387 F. App'x 127, 129 (3d Cir. 2010) (internal quotations omitted).

As detailed above, in *Pittsburgh Corning* the Bankruptcy Court fully and finally adjudicated Garlock's claim to gain broad access to the 2019 Exhibits. *See* SROA Tab 218 at 3; SROA Tab 199 at 66. Garlock's attempt to resurrect the same claim in its Access Motion is now barred by *res judicata*. The Bankruptcy Court recognized this identity of claims in its Memorandum Opinion: "Garlock has, in essence, repeated what it sought in *Pittsburgh Corning* against all of the debtors captioned herein, yet failed to identify even one of its creditors for which it seeks information." Mem. Op. at 14. Garlock's refusal to adhere to the Bankruptcy Court's directives that the broad remedy would not be approved, and failure to follow its alternative avenue for redress by provided a narrower and specific inquiry cannot save it from application of *res judicata*. (*See* SROA Tab 218 at 3). Thus, Appellees respectfully request that the Court dismiss this appeal.

## B. THE BANKRUPTCY COURT'S RULING THAT THE CLOSED CASE SHOULD NOT BE REOPENED WAS CORRECT AS WAS ITS HOLDING THAT GARLOCK WAS REQUIRED TO INTERVENE IN THE CLOSED CASE IN ORDER TO FILE ITS MOTIONS FOR ACCESS

The Bankruptcy Court correctly denied Garlock's motions to reopen the Closed Case. Mem. Op. at 10. Garlock contends that the Bankruptcy Court erred in requiring Garlock to move to reopen the Closed Case as a condition precedent to hearing its arguments on access to the protected 2019 Exhibits. Garlock's view ignores basic issues of bankruptcy court jurisdiction. The Bankruptcy Court expressed stated that it did not retain jurisdiction. *See* 2/14/2011 Hrg. Tr. at 17:7-17.8. ("I have not kept jurisdiction over a Rule 2019 motion in a closed case.") Once a bankruptcy case is closed, the court has no jurisdiction over a subsequently raised dispute unless the case is first reopened. *In re Antonious*, 373 B.R. 400, 406, n.5 (Bankr. E.D. PA 2007)

(collecting authority).  As the cases were closed, the Bankruptcy Court was stripped of its authority to even consider Garlock's expansive request unless Garlock successfully filed and prosecuted a motion to reopen each case.

The Bankruptcy Code provides that "[a] case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause."  11 U.S.C. §350(b).  Whether to reopen a closed bankruptcy case is committed to the discretion of the bankruptcy court.  *See, e.g., Donaldson v. Bernstein,* 104 F.3d 547, 551 (3d Cir. 1997); *Judd v. Wolfe,* 78 F.3d 110, 116 (3d Cir. 1996); *Matter of Case,* 937 F.2d 1014, 1018 (5th Cir. 1991) ("This discretion depends upon the circumstances of the individual case and accords with the equitable nature of all bankruptcy court proceedings."); *accord, Hawkins v. Landmark Finance Co.,* 727 F.2d 324, 328 (4th Cir. 1984); *Matter of Becker's Motor Transportation, Inc.,* 632 F.2d 242, 245 (3d Cir. 1980); *Urbanco, Inc. v. Urban Systems Streetscape, Inc.,* 111 B.R. 134, 135 (W.D. Mich. 1990).  The burden of demonstrating circumstances sufficient to justify the reopening is placed upon the moving party.  *See In re Cloninger,* 209 B.R. 125, 126 (Bankr. E.D. Ark. 1997); *In re Nelson,* 100 B.R. 905 (Bankr. N.D. Ohio 1989).  The decision of the Bankruptcy Court to reopen a previously closed bankruptcy proceeding is reviewed for abuse of discretion.  *In re Zinchiak*, 406 F.3d 214, 222 (3d Cir. 2005).  Under such review, bankruptcy courts have broad discretion in deciding when and whether to reopen a case.  *Id. at* 223.

However, the Bankruptcy Court never asserted that it lacked "jurisdiction" to open the Closed Case in order to determine the motions for access.  The court merely stated that the cases would have to be reopened in order for the Access Motions to be filed and then properly exercised its jurisdiction *and* its discretion by determining that it would be disruptive to re-open the cases.  The Bankruptcy Court also correctly found that such disruption was not warranted by

-17-

the request for access to information that was private, protected and for which Garlock had not established any particularized need. Mem. Op. at 10.

Garlock's reliance on *In re North Bay General Hospital*, 404 B.R. 429, 436 (Bankr. S.D. Tex. 2009) to support its argument that the instant case provides the requisite "other cause" is misplaced. First, the phrase, "for other cause" is not all-inclusive, but must be interpreted in a way that is consistent with the canon of statutory construction, *ejusdem generis*. This canon provides that "where general words follow specific words in a statutory enumeration, the general words are construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words." *Official Committee of Unsecured Creditors of Cybergenics Corp. ex rel. Cybergenics Corp. v. Chinery*, 330 F.3d 548, 562 -563 (3d Cir. 2003), *citing Circuit City Stores, Inc. v. Adams,* 532 U.S. 105, 114-15, 121 S.Ct. 1302, 149 L.Ed.2d 234 (2001) (quoting 2A N. Singer, *Sutherland on Statutes and Statutory Construction* *563 §47.17 (1991)).  As the first two bases for reopening a closed case under §350(b) of the Bankruptcy Code are quite narrow and directly related to the administration of the estate itself, the catch-all provision is necessarily similarly restricted and cannot be used to expand the limits imposed by the remainder of the statute.

*In re North Bay,* a plaintiff in an adversary proceeding sought to unseal a settlement agreement in a prior, unrelated bankruptcy case. *Id.* at 432.  The agreement in the closed case resolved a fee dispute between lawyers for the various committees involved in the case, was memorialized in an "Agreed Order" approved by the court, and sealed for no stated reason except that the parties requested it. *Id.*  Plaintiff in the separate pending case alleged that one of the law firm parties to the agreement had engaged "in a pattern of wrongdoing" relating to its retention. *Id.* at 433.  The court examined the order which provided, in part, that the court

-18-

maintained jurisdiction over the order.  Because the court found that it had "expressly provided

that it would retain jurisdiction over the Agreed Order," and the relationship between the

settlement agreement and the adversary proceeding was clear, the court determined whether to

unseal the Agreed Order, but first reopened the case.

*North Bay* first demonstrates that a court must reopen a closed case before it may take

any action in that closed case.  However, the case is otherwise distinguishable from the case at

bar for several reasons.  First, in *North Bay*, at the time of the sealing of the pleading, the parties

had made no "showing that the pleadings were entitled to protection …" *Id.* at 431.  In the

instant case, the Bankruptcy Court's order, requiring the production of identifying information in

a format intended to protect the confidentiality of the filing firms' clients was made for the

specific purpose of providing a heightened protection to clients who might or might not be future

claimants.  Further, the motion to unseal pleadings in *North Bay* was directed at one discrete

pleading.  Here, Garlock sought access to every 2019 Statement filed by every law firm listing

every client appearing on the protected exhibit, whether or not Garlock had any relationship with

that individual or not.  *North Bay*, on which Garlock relies, actually supports the Appellee's

position.

Garlock utterly failed to present a "cause" within the meaning of §350(b) of the

Bankruptcy Code that justified re-opening the Closed Case.  Cases discussing the propriety of

reopening a case are uniformly and exclusively concerned with an issue related to the proper

administration of the estate in the closed case, and not, as here, with some remote and

speculative connection with a distinct and unrelated bankruptcy.  *See, e.g., In re Arboleda*, 224

B.R. 640 (Bankr. N.D. Ill. 1998) (Determination as to whether appropriate circumstances exist to

reopen bankruptcy case and undo technical abandonment of estate property include the

following:  (1) whether denial of motion would result in injustice to creditors, (2) whether trustee

was initially afforded ability to make informed decision with respect to administering asset, (3)

whether debtor substantially improved abandoned property, (4) whether failure to properly

administer property was trustee's fault, and (5) whether significant time has passed since trustee

abandoned property); *Matter of Firstmark Corp.*, 132 F.3d 1179, Bankr. L. Rep. (CCH) ¶77593

(7th Cir. 1997) (declining to reopen closed chapter 11 cases to allow investigation of debtor's

retained accountants when party seeking reopening.  When that party had ample opportunity to

investigate commence and pursue causes of action prior to closing and failed to do so).  The

denial of Garlock's motion to reopen the Closed Case should be affirmed.

### C.   GARLOCK LACKED STANDING TO REQUEST ACCESS TO THE UNFILED EXHIBITS

The Bankruptcy Court engaged in a thorough discussion of the principles of

constitutional and prudential standing, ultimately concluding that Garlock lacked standing to

intervene or reopen any of the underlying bankruptcy cases.  Mem. Op. at 4, 9.  Standing is a

"threshold question in every federal case, determining the power of the court to entertain the

suit."  *Warth v. Seldin*, 422 U.S. 490, 498 (1975).  It is a constitutional requirement, not subject

to waiver, "that must be raised, either by the parties or by the court, whenever it becomes

apparent, even on appeal."  *Baron & Budd, PC v. Unsecured Asbestos Claimants*, 321 B.R. 147,

158 (Dist. Ct., D.N.J. 2005) (citing *Belitskus v. Pizzingrilli*, 343 F.3d 632, 639 (3d Cir. 2003) and

*Nat'l Org. for Women, Inc. v. Scheidler*, 510 U.S. 249, 255 (1994)); *see also In re Combustion*

*Engineering*, 391 F.3d 190, 214 (3d Cir. 2004) (citing *Bender v. Williamsport Area Sch. Dist.*,

475 U.S. 534, 546 n. 8 (1986) ("The rules of standing, whether as aspects of the Art. III case-or-

controversy requirement or as reflections of the prudential considerations defining and limiting

the role of the courts, are threshold determinants of the propriety of judicial intervention.")).

### 1.    Garlock Does not Satisfy Article III Standing

Applying longstanding precedent, the Bankruptcy Court concluded that Garlock failed to "show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."  Mem. Op. at 4 (citing *Pa. Prison Soc'y v. Cortes*, 622 F.3d 215, 228 (3d Cir. 2010)); *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (the irreducible constitutional minimum of standing contains three elements:  injury in fact, causal connection between injury and conduct complained of, and likelihood that favorable decision will redress the injury).  Rather than address the Bankruptcy Court's standing discussion, Garlock ignores this portion of the decision altogether and incorrectly asserts that the Bankruptcy Court did not consider the proper legal standard for standing in the open and closed cases and alleged that that a third-party only needs to show an obstacle to access of judicial record to have Article III standing)  (App. Br. at 18-19) (*citing Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 777 (3d Cir. 1994).

However, *Pansy* is inapplicable to the current case as the exhibits to the 2019 Statements were not filed with the Bankruptcy Court and, therefore, are not judicial records entitled to a presumption of public access.  *See Pansy*, 23 F.3d at 783 (determining that settlement agreement not filed with court was not a judicial record and affirming district court's refusal to allow newspaper to obtain settlement agreement under right of access doctrine).

### a.    Garlock Fails to Allege any Injury From the Entry of the 2019 Orders

Because the 2019 Exhibits are not judicial records subject to the right to access doctrine, Garlock must demonstrate that it has constitutional standing to proceed with its motions.  The

Bankruptcy Court properly concluded that Garlock failed to establish that "it is or was a party or party in interest in these bankruptcy cases," Mem. Op. at 5-6, and commented on the fact that "Garlock is no longer a defendant in the tort system and has never filed a claim in any of the bankruptcy cases." *Id.* at 5. The Bankruptcy Court also noted that Garlock has not demonstrated that it has suffered any injury, "much less a concrete or particularized harm or injury that is imminent," because its "allegations of harm are entirely a matter of conjecture and speculation," *id.* at 6, and are "as generalized a grievance" as could possibly be asserted. *Id.* at 9. The only potential injury Garlock identified to the Bankruptcy Court are RICO claims or fraud claims that Garlock believes it "may have" against the asbestos plaintiffs' bar in general. However, Garlock failed to provide any evidence of an injury. As such, Garlock fails to identify a particularized, actual injury – rather than a conjectural or hypothetical injury – and simply "raises the specter of a nationwide conspiracy … to defraud Garlock … without identifying even one of its creditors whose 2019 information it seeks." *Id.* at 6. Accordingly, Garlock failed to satisfy the requirement for constitutional standing and its request was properly denied by the Bankruptcy Court.

> **b.** **Even if Garlock had Somehow Demonstrated Actual Injury, Such Injury Could not be Redressed by the Bankruptcy Court**

The Third Circuit acknowledges that redressibility is an important component of standing. Absent redressibility, a court will not undertake an examination of an issue, as such an exercise could lead to a futile result. *See Pichler v. UNITE*, 585 F.3d 741 (3d Cir. 2009). In *Pichler*, a non-profit organization, NRTW, sought to intervene in a class action arising from the Driver's Privacy Protection Act in order to challenge a protective order restricting access to certain disputed search records. *Id.* at 744-45. The Third Circuit held that the non-profit did not have standing to intervene because "[t]he protective order is not the only reason the NRTW is

prevented from accessing the Disputed Search Records here … [e]ven absent the protective order, disclosure still cannot be allowed if it would violate the prohibitions and protections" established by Congress.  *Id.* at 751.  Because "the proposed use for which the NRTW seeks the Disputed Search Records is not permissible under the [statute] … the court action cannot redress the NRTW's asserted injury.  The NRTW therefore lacks standing to challenge the protective order."  *Id.* at 753.

Even assuming Garlock could demonstrate that it had suffered an actual injury, the Bankruptcy Court found that the injury would not be redressed by permitting it access to the 2019 Exhibits.  Mem. Op. at 9 ("Permitting access to the statements by strangers to the bankruptcy cases in which they were filed will not redress anything.").  The court's analysis of this issue was correct; Garlock cannot use the 2019 Exhibits for its alleged purposes because these "statements are not claims, nor are they ballots … which are assertions of claims."  *Id.*  The 2019 Exhibits do not prove fraud in the tort system, nor are they likely to be admissible, probative evidence in Garlock's own estimation process.[13]  Garlock's inability to use the Exhibits is fatal to its standing to seek access.

### 2.    Garlock Does not Have Prudential Standing to Prosecute this Appeal

Separately, Garlock fails to satisfy the separate prudential standing requirement.  As the Third Circuit noted in *Pittsburgh Corning*, 260 Fed. App'x at 466 n.4, the "person's aggrieved" test exists as a prudential standing requirement in bankruptcy appeals.  *Id.*  This requirement "limits bankruptcy appeals to persons whose rights or interests are directly and adversely

---

[13] As previously noted, the Court presiding over Garlock's bankruptcy has already stated that it will not delay estimation pending resolution of these appeals.  In addition, the same court previously denied a similar effort by Garlock to obtain information from law firm databases on the basis that Garlock had failed to establish the relevance of such information.  *In re Garlock Sealing Technologies, LLC* Case No. 10-31607 Dkt. 1347.

affected pecuniarily by an order or decree of the bankruptcy court," and "is more restrictive than Article III standing." *Id.*

Garlock fails to articulate any basis for appellate standing.  To the extent it relies upon the same argument as it does for its standing below, that there is an obstacle to its receipt of the 2019 Exhibits, Garlock does not have standing.  A similar argument made by insurers seeking to challenge the 2019 Orders originally entered by Judge Fitzgerald in two of the cases Garlock now appeals from:  *In re Kaiser Aluminum Corp.*, 327 B.R. 554, 558-59 (D. Del. 2005) (holding "type of direct, pecuniary interest contemplated by the 'aggrieved person' test," noting that these "incidental costs apply to anyone seeking access to the Rule 2019 information, and if this injury were enough, it would confer standing on anyone to challenge the Rule 2019 Orders.") and *In re Pittsburgh Corning Corp.*, 2005 WL 6128987, at *6 (W.D. Pa. 2005) (finding "pecuniary concerns raised by appellants in this case do not support a finding that they meet the 'aggrieved persons' test.") failed.  In both cases, the District Courts held that the mere fact that there was an obstacle to the insurers' receipt of the documents did not confer appellate standing.

### 3.    Section 107 of the Bankruptcy Code Does not Provide Garlock With Standing

Although the Bankruptcy Court did not address standing under section 107 of the Bankruptcy Code – presumably because the exhibits to the 2019 Statements were not judicial records to which section 107 of the Bankruptcy Code would apply – this section does not provide Garlock with standing to pursue a private right of action.  *See French v. Am. Gen. Fin. Servs (In re French)*, 401 B.R. 295, 306 (Bankr. E.D. Tenn. 2009) (the "legislative history evidences that Congress did not intend for §107(c) [of the Bankruptcy Code] to create a private right of action or to be a remedial statute in any way.  Instead, it expressly discusses the duty of the court to

restrict public access to the extent *the court* finds that disclosure of information creates an undue risk of identity theft.") (emphasis in original).[14]

As its own pleadings state, Garlock is pursuing access to the personal information of thousands of asbestos victims to support its novel theory of asbestos claim estimation and to attempt to find support for its currently unsupported RICO or fraud claims against the asbestos plaintiffs bar. *See* Feb. 14, 2011 Hrg. Tr. at 11:2-11 SROA Tab 14 (The Court: "Garlock isn't seeking these to vindicate an [sic] public right. Garlock's own motions indicate that they are attempting to access these documents for use in attempting to prove that somebody lied.").

Therefore, as Garlock has interposed no substantive challenge to the Bankruptcy Court's standing ruling, nor is there any basis upon which to consider Garlock an actual party to the litigation or to be an aggrieved person under the constitutional standing doctrine, the Bankruptcy Court's determination that Garlock lacked standing to intervene in the dozen separate bankruptcy cases should be affirmed. There is no basis on which Garlock can demonstrate that it has standing to pursue this appeal.

### D.   **EVEN IF THE BANKRUPTCY COURT'S ANALYSIS OF THE STANDING ISSUE WAS INCORRECT, THE COURT CORRECTLY DENIED GARLOCK ACCESS TO THE 2019 EXHIBITS**

Garlock inexplicably asserts that the Bankruptcy Court failed to consider the proper standard for public access to judicial records, and conflates the considerations of section 107 of the Bankruptcy Code with the common law under *Pansy* and *Goldstein v. Forbes* (*In re*

---

[14] The insurers in *Pittsburgh Corning* also argued that they had standing to challenge the 2019 Orders because "the bankruptcy court improperly failed to order compliance with section 107 of the Bankruptcy Code" by not requiring the 2019 Exhibits to be filed with the court and part of the public record. *See* 2005 WL 6128987, at *6. The District Court rejected the insurers' argument, noting that "[i]f any party … could raise on appeal an argument with respect to noncompliance with a Federal Rule of Bankruptcy Procedure or a section of the Bankruptcy Code, the number of appeals would be potentially dramatically increased" and, moreover, that "permitting appeals in those circumstances would not be consistent with the prudential approach to standing recognized by the [] Third Circuit in its application of the "aggrieved persons" test. *Id.* The court concluded that "[a]ppellate standing cannot be based merely on a bankruptcy court's failure to require compliance with a bankruptcy rule or provision of the Bankruptcy Code." *Id.*

*Cendant*), 260 F.3d 183 (3d Cir. 2001). *See* Appellant's Brief at 19-23. Contrary to Garlock's assertions, the Bankruptcy Court's analysis of both the common law right of access under *Pansy* and *Cendant* standard and the statutory right of access under section 107 are both specifically referenced, analyzed, and properly decided in the memorandum opinion. Mem. Op. 10-27.

First, the Bankruptcy Court explained the purpose of Rule 2019. Second, the court considered the public right of access in the context of Rule 2019. Third, the court considered whether the strictures of section 107 of the Bankruptcy Code, despite any public right of access, required protection of the sought information.

The Bankruptcy Court's ruling on the right of access properly balances the rights of the public to information placed on a judicial record, the purposes of the 2019 Statements under the Bankruptcy Code, and non-party rights of privacy to confidential personal and medical information. The Bankruptcy Court's determination that the information filed off the public record is of a confidential nature may only be disturbed if Garlock can establish that the Bankruptcy Court's determination was clearly erroneous. The Bankruptcy Court's determination that Garlock's "need" for the confidential, non-party information was outweighed by the privacy interests of those individuals is amply supported by the record and the Bankruptcy Court's Opinion.

Significantly, the Bankruptcy Court identified another source for Garlock to obtain information that was responsive to its articulated discovery purposes that does not raise the unique confidentiality and privacy interests that accompany the 2019 Exhibits. The balloting records, which reflect a claimant's assertion of actual creditor status, and actual participation in the case, are available to Garlock. The existence of public information concerning who took action in the bankruptcy case, as well as the greater relevance of the balloting records, eliminates

the need to reveal private medical and other confidential personal information from persons who may or may not be litigants.  *See Nixon v. Warner Commc'ns*, 435 U.S. 589, 594-95 (1978); *In re 50-Off Stores, Inc.,* 213 B.R. 646, 650 n.7 (Bankr. W.D. Tex. 1997).

       **1.**      **The Bankruptcy Court Properly Restricted Garlock's Access to the 2019 Exhibits Under the Third Circuit's Decision in *Pansy v. Borough of Stroudsburg* and its Progeny**

In its brief, Garlock expends considerable ink attempting to convince this Court that the appropriate test for determining access to sealed information is found in *Cendant Corp.*, 260 F.3d 183 (3d Cir. 2001).  *See generally* Appellant's Brief at 16-24 (discussing *Cendant* and stating Third Circuit's "settled standards" require sealing party to demonstrate sealed material is "the kind of information that courts will protect and that disclosure will work a clearly defined and serious injury to the party seeking closure").  However, Garlock's effort fails.  The *Cendant* test is a "heightened standard which [the Third Circuit] held must be applied to sealing class action bids …", *see* 260 F.3d at 196, because "[i]n class actions, the lead attorneys have an unusual amount of control" over the litigation and the "only stage that class members can exercise effective control is in the selection of class counsel."  *See id.* at 193.  *Cendant* does not apply when determining whether confidential information protected by court order is subject to disclosure.

Garlock ignores the Third Circuit's admonition that the right of access doctrine is "not absolute."  *See Leap Sys., Inc. v. Moneytrax, Inc.*, 638 F.3d 216, 221 (3d Cir. 2011) (citing *Nixon v. Warner Commc'ns*, 435 U.S. 589 (1978)); *Cendant*, 260 F.3d. at 194 ("Although the common law right to public access is a recognized and venerated principle, courts have also recognized the accompanying principle that 'the right is not absolute.'") (citations omitted).  A court has "supervisory power over its own records" and while there may be a "presumption in favor of public accessibility", the court has the authority to seal documents "when justice so requires" and

-27-

when the sealing party demonstrates that the "interest in secrecy outweighs the presumption."

*See Leap Sys.* at 221-22.  Once the sealing party satisfies this balancing test, the court is then

required to apply its own balancing test to determine whether good cause exists to issue or

modify a confidentiality order.[15]  *See Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 787 (3d

Cir. 1994) (holding that good cause in support of protective order determined by balancing

several factors).

The *Pansy* factors for "good cause" include:

> (1)   the interest in privacy of the party seeking protection;
>
> (2)   whether the information is being sought for a legitimate purpose or an improper purpose;
>
> (3)   the prevention of embarrassment, and whether that embarrassment would be particularly serious;
>
> (4)   whether the information sought is important to public health and safety;
>
> (5)   whether sharing of the information among litigants would promote fairness and efficiency;
>
> (6)   whether the party benefiting from the order of confidentiality is a public entity or official; and
>
> (7)   whether the case involves issues important to the public.

*Pansy*, 23 F.3d at 787-88; *see also Arnold v. Pa. Dept. of Transp.*, 477 F.3d 105, 108 (3d Cir.

2007) (applying *Pansy* factors to deny, in part, newspaper's motion to vacate confidentiality

order and maintaining confidentiality over discovery documents identifying non-parties); *Crum*

*& Crum Enters., Inc. v. NDC of Cal., L.P.*, Civil No. 09-145 (RBK), 2011 WL 886356, at *2 (D.

Del. Mar. 10, 2011) (applying *Pansy* factors and finding "good cause" for maintaining protective

---

[15] It appears that the Third Circuit is not concerned with the actual title of the order restricting access and uses the term "confidentiality order" as a catch-all to include "any court order which in any way restricts access to or disclosure of any form of information or proceeding, including but not limited to 'protective orders,' 'sealing orders' and 'secrecy orders.'"  *See Pansy*, 23 F.3d at 777 n.1.

order and confidentiality of certain documents); *LG Display Co., Ltd. v. AU Optronics Corp.*,

Civil Action No. 06-726-LPS, 2010 WL 5463305, at *3 (D. De. Dec. 29, 2010) (denying third-

party's motion seeking modification of protective order based on analysis of *Pansy* factors).

The Bankruptcy Court's implicit – rather than explicit – analysis of the *Pansy* factors is

not fatal to the continued nondisclosure of the 2019 Exhibits.  Significantly, the Bankruptcy

Court made findings of fact in its original 2019 Orders, at the various hearings where Garlock

presented its underlying access and intervention motions, and in the Memorandum Opinion

supporting "good cause" for keeping the 2019 Exhibits confidential.  The asbestos victims need

for secrecy outweighs Garlock's desire to access to the 2019 Exhibits in order to conduct its

fishing expedition in search of evidence in support of its conspiracy theory.  As the Bankruptcy

Court found, the claimants appearing on 2019 Exhibits are not creditors and, as such, are entitled

to maintain their privacy.  *See* SROA Tab 14 at 33:23-24 ("The 2019 statements don't put the

nature of the disease at issue.").  The asbestos victims deserve to keep their medical history and

personal information private until they become an actual creditor in any of the underlying

bankruptcy cases.  *See* SROA Tab 14 at 14:13-15 ("[I]t's the vote in the case later on that

substantiates whether the creditor thinks it has a claim, and I've already told you, you can have

the ballots.").  As the Bankruptcy Court pointed out, medical information and personal

information would not be available to Garlock in the tort system until the claimant took some

affirmative action, such as filing a complaint.  *See id.* at 33:21-23 ("[I]ndividual A files a lawsuit

in a state court and says, I have mesothelioma; yes, that individual has filed a suit and put that at

issue.  The 2019 Statements don't put the nature of the disease at issue.").  Because the interest

in secrecy outweighs the presumption of access, the Bankruptcy Court implicitly engaged in the

balancing test required by *Pansy*.

2.       **Application of the *Pansy* Factors Requires Denial of Garlock's Excessive Requests**

As to the first *Pansy* factor, interest in privacy of the victims, the potential claimants most assuredly have an interest in privacy with regard to very sensitive medical and personally identifiable information.  This factor weighs in favor of nondisclosure.

The second *Pansy* factor, whether the information is being sought for a legitimate purpose or an improper purpose, also weighs against Garlock.  Garlock argues that neither its intended use of the filings, nor filings intended purpose, has any bearing on whether this Court has good cause to continue its protection of the 2019 Exhibits.  *See* SROA Tab 14 at 12:23-25 ("First, Your Honor, I would submit that Garlock's purpose is not relevant nor is the purpose of the Rule 2019 statements.").  The Third Circuit has rejected Garlock's position and has held that the motive for seeking access is relevant.  *See Pansy*, 23 F.3d at 787 ("… a factor to consider is whether the information is being sought for a legitimate purpose or for an improper purpose.").

The purpose for which Garlock seeks access to the 2019 Statements is not valid, logical or sound.  *See* SROA Tab 14 at 11:2-5 ("Garlock isn't seeking these to vindicate an [sic] public right.  Garlock's own motions indicate that they are attempting to access these documents for use in attempting to prove that somebody lied."); Mem. Op. at 6 ("Garlock says it needs the information with respect to causes of action it "may have" under RICO"); Mem. Op. at 20 ("Garlock seeks this broad-based, pre-complaint discovery as a fishing expedition casting the widest possible net in separate asbestos bankruptcy cases, without naming one attorney, one firm or one creditor of Garlock's who allegedly so lied.").[16]  Garlock argues that the 2019 Statements

---

[16] In fact, at the early stage of the bankruptcy proceeding in which the 2019 Statements are filed, the very fact that a client has consulted with and engaged an attorney is confidential information within the meaning of the Delaware Rules of Professional Conduct, in pertinent part "a lawyer shall not reveal information relating to the representation of a client unless the client gives informed consent, the disclosure is impliedly authorized in order to carry out the representation, or the disclosure is permitted by paragraph (b)."  The Bankruptcy Court was correct in acting to

Continued…

can be used to prove that plaintiffs were filing claims against multiple debtors, or suing multiple defendants, without disclosing this purported joint liability in each case. Garlock relies on the fact that the 2019 Statements were verified, and, in some cases include attorneys' statements of "personal knowledge." However, Garlock is playing a cynical game of "gotcha" here. The use of this language merely reflects a certain awkwardness inherent to applying the Judge's Rule 2019 remedy to these cases. All the participants in the process understood that this language could not be fairly, or even possibly, construed as an attorney having personal knowledge of the source of his clients' injuries.

In the face of these well-known facts of bankruptcy and asbestos, Garlock's insistence that these statements have evidentiary value that could be used to support a determination that attorneys "were *lying* in one (or both) forums" is disingenuous. This language which, in most cases, tracks the language of Rule 2019, is designed only to disclose and verify representation of the individuals listed, and not to place the attorney in a position of fact witness regarding the future determination of the validity or value of his client's claims. *See* SROA Tab 14 at 29:21-30:6 ("Mr. Cassada, you're assuming, you make, I think, an invalid assumption, that the Rule 2019 statements are the equivalent of a proof of claim, and they're not. They're not signed by a creditor. They're not signed by a lawyer on behalf of the creditor. They're signed by the lawyer on behalf of the law firm. It says, We represent X-people…. These statements, the 2019 statements aren't evidence that a creditor has filed a false claim against Garlock. They're a statement by a lawyer that says we represent these folks."). Garlock's intended use of these Statements is not legitimate and, therefore, the second factor weighs in favor of nondisclosure.

---

….Continued
protect the identities of the Certain Law Firm Appellees' clients at that early stage of the proceedings and Garlock can point to no circumstances that have changed in a way to persuade the Court to amend its orders.

Individuals listed in the 2019 Exhibits have not put their medical conditions at issue.  It would undoubtedly be an invasion of privacy and might be embarrassing to have certain private medical information publicly available simply to satisfy Garlock's improper purpose.  *See* SROA Tab 14 at 34:20-24 ("Well, certainly there's a basis in law.  People don't have to disclose the fact that they're sick to anybody unless they voluntarily choose to do it, and they haven't voluntarily submitted a 2019 statement, the law firm has.").  Furthermore, Garlock's motions essentially assert that the potential claimants and law firms have lied without identifying a single individual who has actually defrauded Garlock or any other party.  *See* SROA Tab 14 at 11:2-11.

The fourth factor, whether the information sought is important to public health and safety, weighs in favor of nondisclosure.  None of the information Garlock seeks in the 2019 Exhibits is important to public health and safety.

The fifth factor, that sharing information among litigants would promote fairness and efficiency, is the primary factor that Garlock relies upon for seeking access to the confidential exhibits.  However, as set forth above, the documents in question have no bearing on how the bankruptcy cases were ultimately administered and were essentially non-existent as it relates to the Court's function in overseeing the administration of the plans and the creation of the trusts. *See, e.g., Leucadia, Inc. v. Applied Extrusion Techs., Inc.,* 998 F.2d 157, 164-65 (3d Cir. 1993) (refusing to extend public access to discovery motions and materials).  Indeed, until a claimant actually takes an action in a bankruptcy case or asserts a right to take action in a bankruptcy case, the fact of the representation in that bankruptcy case is not meaningful.  The Bankruptcy Court has already agreed to Garlock's request to have access to the plan solicitation ballots in the underlying bankruptcy cases.  *See* SROA Tab 14 at 14:13-15.

The sixth factor, whether the party benefiting from confidentiality is a public entity or official, weighs in favor of nondisclosure because neither party is a public entity or official. *See Crum & Crum*, 2011 WL 886356, at *5.

The seventh factor, whether the issues are important to the public, also weighs in favor of nondisclosure. There are no issues present that are important to the public at large as each individual victim may seek compensation for injuries sustained while working for, or with products manufactured by, the various debtors. "[I]f a case involves private litigants, and concerns matters of little legitimate public interest, that should be a factor weighing in favor of granting or maintaining an order of confidentiality." *See id.* at *5 (citing *Pansy*, 23 F.3d at 788).

Finally, *Pansy* requires an additional factor where a party seeks to modify a confidentiality order – as Garlock is essentially attempting to do here. The court must factor the parties' reliance on the court's earlier issuance of a confidentiality order. Here, this additional factor weighs in favor of nondisclosure. *See* SROA Tab 14 at 74:18-75:3 ("And that was made clear when the law firms agreed to file the 2019 statements. In some instances they represent potentially future claimants, people who know they've been exposed but have no injury, demand holders and yet those people may never have a demand because their injury may never manifest and so, the statements don't necessarily show that there is a, quote, "present creditor" involved. That's the difficulty with 2019 in a mass tort context. So they don't always show that there is a creditor. What shows that there is a creditor in a case is the ballot that was voted."). Tort victims' counsel relied heavily on the Bankruptcy Court's decision to hold the 2019 Exhibits confidential, especially with regard to personal identifying information and medical history. Without this reliance, Appellees would have continued to oppose providing the sensitive, personal information required by the Rule 2019 Orders.

"Discretion should be left with the court to evaluate the competing considerations in light of the facts of individual cases.  By focusing on the particular circumstances in the cases before them, courts are in the best position to prevent both the overly broad use of [confidentiality] orders and the unnecessary denial of confidentiality for information that deserves it…."  *Pansy*, 23 F.3d at 789 (citing Arthur R. Miller, *Confidentiality, Protective Orders, and Public Access to the Courts*, 105 Harv. L. Rev. 427, 492 (1991)).  The Bankruptcy Court evaluated the competing considerations and concluded that Appellant did not deserve access to the confidential 2019 Exhibits.  The *Pansy* factors weigh heavily in favor of nondisclosure.  This court should affirm the Bankruptcy Court's decision to deny Appellant access to the 2019 Exhibits.

### 3.   Protection of the Information Contained in the 2019 Exhibits to the 2019 Statement is Warranted Under Section 107 of the Bankruptcy Code

The Bankruptcy Court properly considered the implications of section 107 of the Bankruptcy Code.  The section which provides, in pertinent part:  "(b) On request of a party in interest, the bankruptcy court *shall*, and on the bankruptcy court's own motion may— … (2) protect a person with respect to scandalous or defamatory matter contained in a paper filed in a case under this title."[17]  11 U.S.C. §107(b) (emphasis added).  The Bankruptcy Court

---

[17] Garlock further argues that it should be granted access to the 2019 Exhibits where it received no objection to the Access Motions on the basis that "the Bankruptcy Court erred by denying Garlock access even to those 2019 Exhibits filed by law firms and claimants who did not object to the Access Motions."  *See generally* D.I. 17 at 35. Garlock's assertion that nonobjectors are not entitled to the section 107 of the Bankruptcy Code's protections – widely misses the mark with regard to Section 107's purpose and its impact on the bankruptcy process.  The Bankruptcy Court properly determined that Garlock has an improper purpose for requesting access and consequently protected the information in all of the 2019 Exhibits.  *See* SROA 14 at 11:2-11.  Furthermore, the Bankruptcy Court properly protected the 2019 Exhibits *sua sponte* when no objections are filed.  *See, e.g.*, 11 U.S.C. §107(b) ("On the bankruptcy court's own motion, the bankruptcy court may protect an entity with respect to a trade secret or confidential research, development, or commercial information"); 11 U.S.C. §107(c)(1) ("The bankruptcy court, for cause, may protect an individual …); Instead, it expressly discusses the duty of the court to restrict public access to the extent the court finds that disclosure of information creates an undue risk" of identity theft) (emphasis in original); *In re Risby*, 2008 WL 116701 (Bankr. E.D. Ark. Jan. 7, 2008) (upon clerk's request for guidance, court ordered that 74 involuntary petitions filed by a prisoner should not be accepted or publicly docketed under §107(c)). Therefore, Garlock's argument fails and this court should affirm the Bankruptcy Court's decision to protect the 2019 Exhibits.

discussed the divergence of section 107 of the Bankruptcy Code from the common law right of

access, noting that some courts have found that section 107 of the Bankruptcy Code completely

supplants the common law right for documents filed in a bankruptcy court. *See* Mem. Op. at 22-

23 and n. 21 (citing *In re Roman Catholic Archbishop of Portland in Oregon*, __ F.3d __, 2011

WL 4375678 (9th Cir. 2011) and *In re Gitto Global Corp.*, 422 F.3d 1 (1st Cir. 2005)).

As amended in 2005, the Bankruptcy Code explicitly provided for protection of any

means of identification "to the extent that the court finds that disclosure of such information

would create undue risk of identity theft or other unlawful injury to the person."  11 U.S.C.

§107(c).[18]

Bankruptcy Rule 9018 provides further elucidation:

> On motion or on its own initiative, with or without notice, the
> court may make any order which justice requires (1) to protect
> the estate or any entity in respect of a trade secret or other
> confidential research, development, or commercial information,
> (2) to protect any entity against scandalous or defamatory matter
> contained in any paper filed in a case under the Code, or (3) to
> protect governmental matters that are made confidential by
> statute or regulation.  If an order is entered under this rule
> without notice, any entity affected thereby may move to vacate or
> modify the order, and after a hearing on notice the court shall
> determine the motion.

Fed. R. Bankr. P. 9018.  Both section 107 of the Bankruptcy Code and Bankruptcy Rule 9018

are in conformity with Rule 26(c) of the Federal Rules of Civil Procedure, which provides that a

court may "make any order which justice so requires to protect a party or person from

annoyance, embarrassment, oppression, or undue burden or expense, including … that a trade

---

[18] Garlock contends that subsection (c) does not apply to this case as it was filed prior to the effective date of the
statute.  (App. Br. at 21 (citing Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. 109-8,
§1501(a), 119 Stat. 23, 216 (2005).  While Appellees do not concede this issue, section (c) does not provide the sole
basis for validity of the Bankruptcy Court's section 107 ruling.  *See, infra,* discussion of *In re Kaiser* and the
propriety of the Bankruptcy Court's section 107 limitation of public access to the Rule 2019 exhibits.

secret or other confidential research, development, or commercial information not be revealed or be revealed only in a designated way."

If the information for which protection is sought fits into any of the categories specified in section 107(b) (and presumably also 107(c)), "the court is required to protect a requesting interested party, and has no discretion to deny the application [for a protective order]". *In re Handy Andy Home Improvement,* 199 B.R. 376, 381 (Bankr. N.D. Ill. 1996) *(quoting in part In re Orion Pictures,* 21 F.3d at 27). "Good cause" does not figure into the analysis. *In re Orion Pictures,* 21 F.3d at 28.

In the instant cases, the Bankruptcy Court fashioned a thoughtful and well considered solution to achieving the dual interests of ensuring authorization for a law firm to act on behalf of multiple claimants while at the same time protecting the sensitive personal information of the individuals they represent who may or may not yet have sought redress from the court as claimants.  As observed by the District Court for the District of Delaware:

> Courts have supervisory power over their records and files and may deny access to those records and files to prevent them from being used for an improper purpose … In the Court's view, ***Judge Fitzgerald's Rule 2019 Based Orders strike the appropriate balance between maintaining the public's right to access the Rule 2019 information and ensuring that the information is not misused.***  Accordingly, the Court concludes that the Bankruptcy Court did not err in declining to post the Rule 2019 information on the electronic docket and in permitting access to that information by motion of the parties and order of the Court.

*In re Kaiser Aluminum Corp.*, 327 B.R. 554, 560 (D. Del. 2005) (internal citations omitted) (emphasis added).

The Bankruptcy Court explained that the 2019 Statements serve specific purposes in the context of these mass tort bankruptcy cases, and improper use of this information will harm not only the individuals identified, but also the attorney/client relationship:

> So let's assume some lawyer has a list of clients wanting to make
> sure that he doesn't get faulted for being under inclusive, but he
> hasn't made any decisions at all as to whether those claimants will
> ever do anything in this case, much less file a proof of claim or
> anything else, and then the only decision that claimants have made,
> the clients and the lawyer for those clients, is whether or not they
> have enough of a claim in this case that they want to vote and
> that's in the ballot material.

*Id.* at 13-14.

Garlock ignores the reasoning of the Order Denying Access, and simultaneously attempts to diffuse the authoritative ruling by the District Court in *Kaiser* on the propriety of the orders under section 107, by stating that it did not make any findings with respect to the propriety of the court's limitation of the public right to access and protection from misuse.  (Appellant's Brief 17 at 22-23).  However, the District Court in *Kaiser* specifically ruled on the public access and section 107 arguments "in the alternative."  *In re Kaiser*, 327 B.R. at 559-560.  The court held that "even if the Court concludes that Appellants have standing to challenge the Revised Rule 2019 Based Orders, the Court concludes that the Bankruptcy Court *did not err … in restricting access to the Rule 2019 information*….  In addition, the Court concludes that the Bankruptcy Court did not abuse its discretion in declining to post the Rule 2019 information on the electronic docket[.]"  *Id.* at 559 (citing 11 U.S.C. §107).

The *Kaiser C*ourt fully considered the propriety of the Bankruptcy Courts action under Section 107 of the Bankruptcy Code, noting that the requirements of section 107 of the Bankruptcy Code allow for the Bankruptcy Court to regulate access to information because of privacy concerns inherent in the medical and personal information of the individuals who may or may not be claimants.  *Id.* at 560; *see also In re 50-Off Stores, Inc.,* 213 B.R. 646, 660 (Bankr. W.D. Tex. 1997) (rejecting motion for access to a retention hearing and stating "then no estate could *ever* hire counsel in a bankruptcy case without being forced to jeopardize the

-37-

value of its causes of action … [because] any statements made regarding the attorney's evaluation of the case would operate as a waiver of the work product privilege and perhaps of the attorney-client privilege … section 107(b) seems to have been promulgated at lease in part to prevent such an untoward result.").

The Bankruptcy Court's limitation of the Rule 2019 Exhibits follows both the letter and the spirit of section 107 of the Bankruptcy Code and the right of public access. *See LEAP*, 638 F.3d 216, 220 ("An exception is made, however, for documents which have not been "filed with, … interpreted or enforced by the district court.") (citing *Enprotech Corp. v. Renda*, 983 F.2d 17, 20–21 (3d Cir. 1993) and *Pansy*).

The 2019 Exhibits were not filed with the Bankruptcy Court, they are not considered by the Bankruptcy Court, and they include information that only will become relevant in the context of this litigation where an actual claimant who comes forward by ballot or affirmative claim was not actually represented by the counsel who filed the underlying 2019 Statement bearing that Claimant's name. The purpose and practice established by the 2019 Orders was upheld as reasonable and appropriate on appeal by the Court in *Kaiser*. As the Bankruptcy Court's opinion notes, nothing has changed since the *Kaiser* opinion was decided.

## **JOINDER**

To the extent appropriate, Appellees hereby join in the arguments advanced by any other party in opposition to Appellant's Brief and incorporate those arguments, by reference, as if fully set forth herein.

## CONCLUSION

For the foregoing reasons, Appellees respectfully urge this Court to affirm the

Bankruptcy Court's Order Denying Access, and grant such other and further relief as to which

the Appellees may be entitled.


**MONTGOMERY, MCCRACKEN,
WALKER & RHOADS, LLP**

Dated: January 13, 2012

/s/ Natalie D. Ramsey
Natalie D. Ramsey (PA 41412)
Ellen C. Brotman (PA 71775)
Davis Lee Wright (PA 90926)
123 S. Broad Street
Philadelphia, PA  19109
Telephone:     (215-772-1500)
Facsimile:     (215-772-7620)
*Counsel to the above-named firms*